## GREELEY *v.* LOWE.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF FLORIDA.

No. 517.  Submitted April 30, 1894. — Decided October 29, 1894.

A suit in equity for the partition of land, wherein the plaintiff avers that he is seized as tenant in common of an estate in fee simple, and is in actual possession of the land described, and, after setting forth the interests of the other tenants in common, and alleging that no remedy at law exists to enable him to obtain his share of said lands in kind, or of the proceeds if sold, and that he is wholly without remedy except in chancery, prays for the partition of the land, and the segregation of his own share from that of the others, and incidentally that certain deeds may be construed and, if invalid, may be cancelled, and that he may recover his advances for taxes and expenses, is clearly a bill to enforce a claim and settle the title to real estate; and as such is a suit covered by § 8 of the act of March 3, 1875, c. 137, 18 Stat. 470, 472, of which the Circuit Court of the district where the land lies may properly assume jurisdiction.

The questions that, the title of some of the parties to the land being in dispute, such titles must be settled before partition could be made; that the interests of several of the defendants were adverse to each other; and that as some of these defendants were citizens of the same State, it would raise controversies beyond the jurisdiction of the Circuit Court to decide, not having been certified to this court, are not passed upon.

Where the laws of a State give a remedy in equity, that remedy will be enforced in Federal courts in the State, if it does not infringe upon the constitutional right of the parties to a trial by jury.

The objection that A. was alleged in the bill to be a resident and citizen of the District of Columbia was met by an amended allegation that A. was " a citizen of South Carolina, now residing in Washington city, District of Columbia; " and while this allegation was traversed, it must, for the purpose of this hearing, be taken as true.

THIS was a bill in equity for the partition of real estate originally filed by George P. Greeley and wife, who were alleged to be citizens of New Hampshire, against 130 defendants, most of whom were citizens of Florida. Of the remaining defendants some were citizens of Georgia, others of Illinois, South Carolina, Alabama, Texas, North Carolina, New York, New Jersey, Mississippi, and one Eliza B. Anderson, of the city of Washington and District of Columbia.

The bill averred the plaintiff, George P. Greeley, to be seized as tenant in common, in fee simple, and in actual possession of 10,016 acres of land in the Northern District of Florida, of the value of $10,000, exclusive of interest and costs, etc.; that one John T. Lowe and Susan, his wife, were originally seized of the said premises by grant from the Spanish government in 1816, as a mill right, Lowe being then married, and his wife Susan being seized by ganancial right of an undivided half of said premises under the laws of Spain, which declared that real estate acquired by either the husband or wife during coverture by purchase, gift, or gain, becomes and remains community property, and that they were seized thereof as tenants in common; that Lowe died in 1824, and the grant was subsequently confirmed by the Supreme Court of the United States in 1842, *United States* v. *Low*, 16 Pet. 162; that the ganancial right and title of said Susan Lowe has never been alienated, relinquished, or annulled, and has been duly protected and guaranteed by the treaty of 1819 between the United States and Spain; that Lowe attempted to convey to one Clark the southern half of this grant, but his wife, then living, did not join, and the half of the south half only was conveyed; that Clark conveyed to Duncan L. Clinch, who died testate, leaving his

executor power to sell said lands; that Susan Lowe survived. her husband, but both died intestate, and their estates had long been settled. That the north half of said grant and half of the south half descended to their children, nine in number.

The genealogy and shares of the heirs and their grantees are stated at great length in the bill, all the claims of the various members being set up and defined, and the invalidity of certain deeds attached as exhibits being averred and pointed out. The bill contained a general averment that no other person except such as were made parties had any interest in or title to the premises; that by reason of the lapse of time, the disturbed condition of the country, etc., it has been almost impossible to trace the lineage of the several families, and to find the actual parties in interest.

The bill prayed that the different deeds attached as exhibits might be construed, and the interest, if any conveyed, ascertained or the deeds cancelled; that all persons having any claims or liens upon the lands might be brought in and required to prove their claims, or have the same held null and void; that partition of the lands be made, if possible and equitable, and if not, that they might be sold and the proceeds distributed; that plaintiff recover his advances for taxes and expenses, including costs and counsel fees; that a master be appointed to state the shares, advances, and fees; and that commissioners be appointed to make partition or sale, etc.

Isaac A. Stewart, one of the defendants resident in Florida, filed a plea to the jurisdiction, setting up, among other things, that the suit was not brought in the district of the residence of either the plaintiffs or defendants; that the controversy was not between citizens of different States; that certain defendants had interests adverse to other defendants; that Eliza B. Anderson, one of the defendants, was a resident and citizen of the District of Columbia; that her claim was adverse to his (Stewart's); that Greeley's wife was improperly joined, was not the cotenant, and could not maintain a suit; that the wives of several of the defendants were improperly joined,

in that they possessed no legal interest in the property; and that others who were necessary parties were not joined as defendants. Thereupon plaintiff moved for leave to amend his bill by inserting after the name of Eliza Anderson the words " citizen of South Carolina, now resident in Washington, D. C.," and also to add other defendants. The court granted the motion to amend, and the cause came on to be heard on the plea to the jurisdiction. The court made a final decree, holding that, while it was true that the complainants were citizens of New Hampshire and resident there, and some of the defendants were citizens of Florida, in the district in which the land lies, yet because there were other defendants, citizens of New York and also of other States than the State in which the complainants reside and have citizenship, and also citizens of other Federal districts than that where the land is situate, and where certain defendants reside, it was decreed that " this court has not jurisdiction over all the defendants to this action, because they are not all residents and citizens of the district in which the land sought to be partitioned lies, and are not all found in said district at the time of the service of the process."

On May 6, 1892, plaintiffs filed a petition for rehearing, and on June 13 amended their bill by striking out the name of Eliza B. Anderson as defendant. While no formal decree subsequent to the rehearing appears to have been entered, by an endorsement made upon the bill of June 15, it would appear that the bill was finally dismissed upon that date. From this decree an appeal was taken to this court, and the question of jurisdiction as above stated was certified to this court for decision, pursuant to section 5 of the Court of Appeals act.

*Mr. George A. King* and *Mr. James R. Challen* for appellants.

*Mr. I. A. Stewart, Mr. E. K. Foster, Mr. A. G. Hamlin,* and *Mr. E. Bly* for appellees.

The bill in this case seeks to obtain the construction of a great number of deeds, mortgages, and contracts set forth in

it ; the ascertainment of the respective interests of parties claiming under them ; and the cancellation of such as appear to convey no interest. Its real object is stated near its close as follows: " That no remedy at law exists to enable the complainant to obtain his share of said lands in kind, or of proceeds if sold, and he is wholly without remedy except in chancery, for that, unless all the shareholders of said lands and all the lienholders thereon are discovered and marshalled, and the valid sustained, and the invalid excluded, and the legal titles quieted as against the illegal, the said lands will forever remain a forlorn wilderness." It is thus sought in one action to determine who are the owners of the land, and then to partition the same, which cannot be done. *Chapin* v. *Sears*, 18 Fed. Rep. 814. This is sought, regardless of adverse claims, interests, and conflicts.

The bill further seeks to recover all money expended by the plaintiff in this litigation, directly or indirectly, or in holding an alleged adverse possession, for taxes paid, for counsel fees, etc. This is sought to be taken out of the proceeds of the sale of the land, upon final decree in partition, regardless of the fact that some of the adverse owners may succeed in establishing their titles to all or portions of the property.

It is further shown that a sale of the property will be necessary. Reasons are alleged why the land cannot be partitioned after the title is litigated, but must be sold by commissioners under the decree of the court.

In order that such sale may be decreed, it is necessary that all parties interested in the property be joined in the proceedings. To decree such a sale while the title is in any manner in dispute, would be decreeing clouds upon the title, rather than clearing them up. The object of the bill thus being for a sale of the land, rather than for partition, such a bill must be distinguished in principle from one in which one or more parties seek the mere partition and setting off of their particular interests, in such manner that none of the parties interested can be injured or in the least affected. In the one case the object of the bill is simply to stake off the interest of the complainants ; in the other it is to affect every foot of land so

that a purchaser at the sale decreed shall obtain a perfect title to the whole. In the former case the controversy might be separate, and all adverse claimants or parties interested might not be indispensable parties; but in the case at bar every party claiming any interest is a material and necessary party. The litigation cannot go on without affecting each and all. If dismissed as to one, it must be as to all, and, under such circumstances, relief cannot be granted to any. *Barney* v. *Baltimore City,* 6 Wall. 280.

In view of the citizenship of the parties, it follows that the court did not err in dismissing the bill for want of jurisdiction. The Federal Constitution allows to United States courts certain maximum jurisdiction, to be granted by Congress from time to time. Jurisdiction of the bill at bar can only be maintained under that clause of the Constitution which authorizes jurisdiction in suits between citizens of different States. The primary prerequisite in this case is that there shall be a controversy between citizens of different States. Congress has delegated to United States Circuit Courts jurisdiction between "citizens of different States," using the very language of the Constitution, with the limitation that in cases in which jurisdiction is dependent upon difference in citizenship, suit shall be brought only in the district of the residence of plaintiff or defendant. Act of August 13, 1888, c. 866, sec. 1; 25 Stat. 433. The entire scope of jurisdiction of these courts is laid down in section 1 of that act, and is not found elsewhere. *Smith* v. *Lyon,* 133 U. S. 315; *Jewett* v. *Bradford Savings Bank,* 45 Fed. Rep. 801.

A controversy between citizens of different States, when there are several plaintiffs or defendants, has been uniformly held for more than ninety years to be one in which each plaintiff is competent to sue, and each defendant liable to be sued at the place where suit is brought. There is no difference in this respect between cases at law and equity. *Smith.* v. *Lyon,* 133 U. S. 315; *Anderson* v. *Watt,* 138 U. S. 694; *Coal Co.* v. *Blatchford,* 11 Wall. 172; *Karns* v. *Atlantic & Ohio Railroad,* 10 Fed. Rep. 309. Every party on one side must be a citizen of a different State from every party on the other. *Blake* v. *McKim,* 103 U. S. 336.

In determining who are the parties, the court is not bound by the title of the cause, or the form of the pleadings. It can examine the record, ascertain the matter in dispute, and arrange the parties on opposite sides, according to the facts, without regard to their technical places in the litigation. *Pacific Railroad* v. *Ketchum,* 101 U. S. 289; *Blake* v. *McKim,* 103 U. S. 336 ; *Peninsular Iron Co.* v. *Stone,* 121 U. S. 631. This power extends to partition suits in chancery, *Beebee* v. *Louisville &c. Railroad,* 39 Fed. Rep. 481; *Covert* v. *Waldron,* 33 Fed. Rep. 311; *Rich* v. *Bray,* 37 Fed. Rep. 273; and is applicable to original suits as well as to those removed from state courts. *Karns* v. *Atlantic & Ohio Railroad,* 10 Fed. Rep. 309; *Pacific Railroad* v. *Ketchum,* 101 U. S. 289; *Peninsular Iron Co.* v. *Stone,* 121 U. S. 631.

Since the passage of the act of 1888, the Circuit Courts of the United States have no original jurisdiction in law or equity, in suits between citizens of one State, and citizens of the same and of another State. *Karns* v. *Railroad Co.,* 10 Fed. Rep. 309; *Smith* v. *Lyon,* 133 U. S. 315; *Covert* v. *Waldron,* 33 Fed. Rep. 311. And as they will not allow their jurisdiction to be imposed upon by improperly invoking it, or allow parties by subterfuge or collusion to successfully thrust jurisdiction upon such courts, they will investigate such matters of their own motion, as it has been the constant effort of Congress and of United States courts to prevent litigation between citizens of the same State in United States courts. *Anderson* v. *Watt,* 138 U. S. 694; *Rich* v. *Bray,* 37 Fed. Rep. 273; *Börs* v. *Preston,* 111 U. S. 252; *Bland* v. *Freeman,* 29 Fed. Rep. 669.

The bill was therefore properly dismissed because, jurisdiction depending only upon difference in citizenship, the suit was not brought in the district of the residence of plaintiff or defendant. On this point the act of August 13, 1888, already referred to, reads as follows :

" But no person shall be arrested in one district for trial in another in any civil action before a Circuit or District Court. And no civil suit shall be brought before either of said courts against any person by any original process or proceeding in

any other district than that whereof he is an inhabitant, but where the jurisdiction is founded only on the fact that the action is between citizens of different States, suit shall be brought only in the district of the residence of either the plaintiff or the defendant." .This must be considered as a limitation upon that other clause of the same section granting generally to Circuit Courts jurisdiction in controversies between citizens of different States. The very language shows this, " and when jurisdiction depends," etc. Congress was empowered by sec. 2, art. 3, of the Federal Constitution to grant jurisdiction without this limitation, in controversies between citizens of different States, but this has never been done. It has been the constant effort of Congress and the courts to limit jurisdiction. It is narrower under the act of 1887 than theretofore. *McCormick Harvesting Machine Co.* v. *Walthers,* 134 U. S. 41 ; *Anderson* v. *Watt,* 138 U. S. 694 ; *Smith* v. *Lyon,* 133 U. S. 315 ; *Bensinger Cash Reg. Co.* v. *Nat'l Cash Reg. Co.,* 42 Fed. Rep. 81.

That the last-named decision, in its construction of sec. 1, did not intend to limit it to cases at common law, or to any particular class of chancery cases, is evident from the cases cited therein. Most of them are chancery cases, and some are cases to enforce liens upon real or personal property within the district. As to the latter see *Coal Co.* v. *Blatchford,* 11 Wall. 172 ; *Peninsular Iron Co.* v. *Stone,* 121 U. S. 631 ; 30 L. Ed. 1020 ; *New Orleans* v. *Winter,* 1 Wheat. 91.

But the appellant contends that jurisdiction is given by § 8 of the act of March 3, 1875, c. 137, 18 Stat. 470, known as the Publication Act. That statute does not enlarge the jurisdiction of United States courts, but only provides a method of bringing parties before the court in a certain class of cases wherein there is jurisdiction otherwise. *Brigham* v. *Luddington,* 12 Blatchford, 237 ; *Pacific Railroad* v. *Missouri Pacific Railway,* 3 Fed. Rep. 772 ; *Jewett* v. *Bradford Savings Bank,* 45 Fed. Rep. 801 ; *Van Antwerp* v. *Hulburd,* 7 Blatchford, 426 ; *Detweiler* v. *Holderbaum,* 42 Fed. Rep. 337 ; *Remer* v. *Mackay,* 35 Fed. Rep. 86.

United States courts have no jurisdiction except such as the

statutes clearly confer. No presumption of jurisdiction exists. *Sewing Machine Cases*, 18 Wall. 553; *Anderson* v. *Watt*, 138 U. S. 694; *Börs* v. *Preston*, 111 U. S. 252; *Menard* v. *Goggan*, 121 U. S. 253; *Robertson* v. *Cease*, 97 U. S. 646; *Brown* v. *Keene*, 8 Pet. 112.

The entire jurisdiction given to the courts is sought to be concentrated in § 1 of the act of 1888. This is the general jurisdictional clause, and none other is intended. The wording of the act is significant. Jurisdiction is granted in § 1, with the limitation that "where the jurisdiction is founded only on the fact that the action is between citizens of different States, suit shall be brought in the district of the residence of either plaintiff or defendant." Then comes § 8 and says that the act shall be so construed as to keep in force the publication act. This does not mean that the publication act shall be paramount, and that citizenship and district within which a party is entitled to be sued shall be disregarded.

If the section which keeps the publication act in force was intended to change any of the provisions of § 1 it would have been mentioned therein as a limitation, just as is the limitation to the clause providing for controversies between citizens of different States, viz., the provision as to where parties shall be sued.

If the publication clause is a jurisdictional clause, it is broad enough to go beyond anything permitted by the Constitution, as it is without limit as to difference of citizenship, or as to districts. Any one could sue any other person anywhere in the whole world in a Circuit Court, regardless of citizenship or any other constitutional limitations, in a certain class of cases therein named. It is plain to be seen that such a construction would array the publication clause in conflict with all the limitations contained in § 1, and we would have an act inconsistent with itself and impossible to be construed. *Brigham* v. *Luddington*, 12 Blatchford, 237; *Bensinger Cash Register Co.* v. *National Cash Register Co.*, 42 Fed. Rep. 81.

If, however, this clause is construed to give a right to proceed by publication only in cases in which the court otherwise

has jurisdiction, as we contend it should be, there is no conflict. In the words of *Brigham* v. *Luddington,* 12 Blatchford, 237, "Nothing in the act of 1872" (the original publication act) "warrants the suggestion that Congress intended anything more than to furnish a means of obtaining jurisdiction of the person of a defendant not found within the district in actions whereof the court, under the Constitution and existing statutes, would have jurisdiction if all the defendants were personally served with process within the district or voluntarily appeared."

The act of 1888 has been construed in many cases in which the publication act is not particularly mentioned, but if the construction of the general jurisdiction of courts therein be sound, this construction cannot be changed by the publication act. *Anderson* v. *Watt,* 138 U. S. 694; *Smith* v. *Lyon,* 133 U. S. 315.

The case of *Anderson* v. *Watt* is the last expression of the Supreme Court upon the question at issue. The publication act is not mentioned, but it will be noticed that the suit is one to enforce an equitable lien upon real estate in the district, and the court unanimously holds that, since the act of 1875, if the defendants reside in the State of which the complainants are citizens, or if each of the indispensable adverse parties is not competent to be sued therein, the Circuit Court cannot retain cognizance of the suit. The difficulty was a jurisdictional one — the controversy was not one between citizens of different States. If it were possible to bring the parties in by publication, the Supreme Court would surely have said so.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

This bill appears to have been dismissed by the court below upon the ground that inhabitants of other districts than the Northern District of Florida were made defendants. The question really is whether, under the act of August 13, 1888, c. 866, 25 Stat. 433, requiring, in actions between citizens of

different States, suits to be brought only in the district of the residence of either the plaintiff or the defendant, it is admissible to bring a suit for partition in a district in which only a part of such defendants reside. As suits are usually begun in the district in which the defendants, or one of the defendants, reside, the question practically involves the whole power of the Circuit Court of one district to take jurisdiction of such suits, brought against defendants some of whom are residents of other districts.

(1) The paragraph of section 1 of the act of 1888, relied upon by the defendants, reads as follows: "And no civil suit shall be brought before either of said courts against any person by any original process or proceeding in any other district than that whereof he is an inhabitant, but where the jurisdiction is founded only on the fact that the action is between citizens of different States, suit shall be brought only in the district of the residence of either the plaintiff or the defendant." In the case of *Smith* v. *Lyon*, 133 U. S. 315, 317, this court held that the Circuit Court has no jurisdiction on the ground of diverse citizenship, if there are two plaintiffs to the action, who are citizens of and residents in different States, and defendant is a citizen of and a resident in a third State, and the action is brought in a State in which one of the plaintiffs resides. As was said by the court, the argument in support of the jurisdiction was, " that it is sufficient if the suit is brought in a State where one of the defendants or one of the plaintiffs is a citizen. This would be true if there were but one plaintiff or one defendant. But the statute makes no provision, in terms, for the case of two defendants or two plaintiffs who are citizens of different States. In the present case, there being two plaintiffs, citizens of different States, there does not seem to be, in the language of the statute, any provision that both plaintiffs may unite in one suit in a State in which either of them is a citizen." The court referring to several prior cases in this court, in which it was held that the word " citizen," as used in the Judiciary Act of 1789, is used *collectively*, and means all citizens upon one side of a suit, and if there are several co-plaintiffs the intention of the act is that each plain-

tiff must be competent to sue, and if there are several code-
fendants, each defendant must be liable to be sued or the
jurisdiction cannot be entertained, held that the same con-
struction must be given to the word " inhabitant" as used in
the above paragraph in the act of 1888, and that, if suit were
begun in a district whereof the plaintiff was an inhabitant,
jurisdiction would only attach if there were no other plain-
tiffs, citizens, and inhabitants of other districts. If this doc-
trine be also applicable to defendants in local actions, it
necessarily follows that suit will not lie in any district of
which a defendant is a citizen or inhabitant, if there are in-
habitants of other districts also made defendants. As above
stated, this practically inhibits *all* suits against defendants
resident in different districts.

A brief review of the history of corresponding provisions in
prior acts will show that it has never been supposed that the
Federal courts did not have jurisdiction of local actions in
which citizens of different districts were defendants, and, in
fact, provision was expressly made by law for such contingency.
In the eleventh section of the Judiciary Act of September 24,
1789, c. 20, 1 Stat. 73, 79, is a provision, subsequently incor-
porated in section 739 of the Revised Statutes, that " no civil
suit shall be brought before either of said courts against an
inhabitant of the United States, by any original process in any
other district than that whereof he is an inhabitant, or in which
he shall be found at the time of serving the writ." Under
this section any number of non-residents could be joined as
defendants if only they were served within the jurisdiction of
the court. *Ober* v. *Gallagher*, 93 U. S. 199.

But to obviate any objection that might be raised by reason
of the non-joinder or inability to serve absent defendants, it
was provided by the act of February 28, 1839, c. 36, 5 Stat.
321, subsequently carried into the Revised Statutes, as section
737, that " when there are several defendants in any suit at law
or in equity, and one or more of them are neither inhabitants
of nor found within the district within which the suit is brought,
and do not voluntarily appear, the court may entertain juris-
diction, and proceed to the trial and adjudication of the suit

between the parties who are properly before it ; but the judg-
ment or decree rendered therein shall not conclude or prejudice
other parties not regularly served with process nor voluntarily
appearing to answer; and non-joinder of parties who are not
inhabitants of nor found within the district as aforesaid, shall
not constitute matter of abatement or objection to the suit."
Construing this act, it was held in *Shields* v. *Barrow*, 17 How.
130, 141, that it did not enable a Circuit Court to make a decree
in equity, in the absence of an indispensable party, whose rights
must necessarily be affected by such a decree.   Says Mr. Justice
Curtis (p. 141) : " It remains true, notwithstanding the act of
Congress and the 47th rule, that a Circuit Court can make no
decree affecting the rights of an absent person, and can make
no decree between the parties before it, which so far involves
or depends upon the rights of an absent person, that complete
and final justice cannot be done between the parties to the suit
without affecting those rights."   This ruling was applied in
*Barney* v. *Baltimore City*, 6 Wall. 280, to a bill for partition
filed by Barney, a citizen of Delaware, in the Circuit Court of
Maryland, against the city of Baltimore and several individuals,
citizens of Maryland, and certain other citizens of the District
of Columbia.   These latter had made a conveyance to one
Proud, a citizen of Maryland, for the special purpose of con-
ferring jurisdiction on the Federal court, such conveyance being
made without consideration, and with an agreement that the
grantee would reconvey on request.   It was held that the court
of chancery could not render a decree without having before
it the citizens of the District of Columbia, and that their con-
veyance to Proud, being merely collusive, conferred no juris-
diction upon the court.

The law remained in this condition until 1872, when Con-
gress, apparently to remove the difficulty suggested by these
cases, passed an act, Act of June 1, 1872, c. 255, 17 Stat. 196,
§ 13, subsequently incorporated into the Revised Statutes as
section 738, providing that " when any defendant in a suit in
equity to enforce any legal or equitable lien or claim against
real or personal property within the district where the suit is
brought, is not an inhabitant of nor found within the said dis-

trict, and does not voluntarily appear thereto, it shall be lawful for the court to make an order directing such absent defendant to appear, plead, answer, or demur to the complainant's bill, at a certain day therein to be designated," etc. And then follows the provision in section 739, that "except in the cases provided in the next three sections, . . . and the cases provided by *the preceding section* (§ 738) no civil suit shall be brought in any other district than that of which the defendant is an inhabitant," etc. The "next three sections" are § 740, in which special provision is made for States containing more than one district, requiring the defendant, if a single one, to be sued in the district where he resides, but if there are defendants in different districts, suit may be brought in either, and a duplicate writ issued against residents of the other districts; § 741, wherein provision is made for suits of a local nature where the defendant resides in a different district in the same State from that in which the suit is brought, permitting process to be served in the district where he resides; and § 742, providing that in any suit of a local nature at law or in equity, where the land or other subject-matter of a fixed character lies partly in one district and partly in another, within the same State, suit may be brought in the Circuit or District Court of either district, etc. These sections — 740, 741, and 742 — are the "next three sections" mentioned in § 739 as exceptions to the general rule that no civil suit shall be brought against an inhabitant in any other district than his own.

But, by the act of March 3, 1875, c. 137, § 1, 18 Stat. 470, a slight change was made in the previous phraseology to the effect that "no civil suit shall be brought before either of said courts against any person by any original process or proceeding in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving such process or commencing such proceedings, *except as hereinafter provided.*" This exception is contained in § 8 of the same act, which deals with the class of cases mentioned in Revised Statutes, § 738, and provides for publication "in any suit . . . to enforce any legal or equitable lien upon or claim to, or to remove any incumbrance or lien or cloud upon

the title to real or personal property within the district where such suit is brought;" with a further proviso that "said adjudication shall, as regards such absent defendant or defendants without appearance, affect only the property which shall have been the subject of the suit and under the jurisdiction of the court therein, within such district." As no exception was made in that act of the cases provided for by §§ 740, 741, and 742, it is at least open to some doubt as to whether suits will lie against non-resident defendants under those sections. So, too, in the act of August 13, 1888, § 5, there was an express reservation of any jurisdiction or right mentioned in § 8 of the act of Congress of which this act was an amendment, (that is, the act of March 3, 1875,) which, as above stated, is the section permitting suits to enforce any legal or equitable lien upon, or claim to real estate to be brought in the district where the property lies, and defendants, non-residents of such district, to be brought in by publication or personal service made in their own districts. It is entirely true that § 8 of the act of 1875, authorizing publication, does not enlarge the jurisdiction of the Circuit Court. It does not purport to do so. Jurisdiction was conferred by the first section of the act of 1888 of "all suits of a civil nature" exceeding two thousand dollars in amount, "in which there shall be a controversy between citizens of different States," and this implies that no defendant shall be a citizen of the same State with the plaintiff, but otherwise there is no limitation upon such jurisdiction. Section 8 of the act of 1875, saved by § 5 of the act of 1888, does, however, confer a privilege upon the plaintiff of joining in local actions defendants who are non-residents of the district in which the action is brought, and calling them in by publication, thus creating an exception to the clause of § 1, that no civil suit shall be brought in any other district than that of which defendant is an inhabitant. Hence, it appears that the case of *Smith* v. *Lyon* really has no bearing, as that case involved only the rights of parties to personal actions residing in different districts to sue and be sued, and was entirely unaffected by the act of 1888, § 5, which deals with *defendants only in local actions*, and expressly reserves juris-

diction, if the suit be one to enforce a lien or claim upon real estate or personal property. The precise question here involved has never been passed upon by this court, but in the only cases in the Circuit Courts to which our attention has been called, the jurisdiction was upheld. *American F. L. M. Co.* v. *Benson*, 33 Fed. Rep. 456; *Carpenter* v. *Talbot*, 33 Fed. Rep. 537; *Ames* v. *Holderbaum*, 42 Fed. Rep. 341; *McBee* v. *Marietta &c. Railway*, 48 Fed. Rep. 243; and *Wheelwright* v. *St. Louis, New Orleans &c. Transportation Co.*, 50 Fed. Rep. 709.

In line with these cases, and almost directly in point here, is the decision of this court in *Goodman* v. *Niblack*, 102 U. S. 556, in which it was held that where a bill was filed to enforce a claim or lien upon a specific fund within reach of the court, and such of the defendants as were neither inhabitants of, nor found within the district did not voluntarily appear, the Circuit Court had the power to adjudicate upon their right to, or interest in, the fund, if they be notified of the pendency of the suit by service or publication in the mode prescribed by Rev. Stat. § 738. This is a distinct adjudication that defendants, who are neither inhabitants of, nor found within the district, may be cited by publication to appear, and if this be so, it is difficult to see how the omission of the words "found within the district" in the act of 1888 makes any difference whatever with regard to the right to call absent defendants in by publication. The act of 1875 gave the right to sue defendants wherever they were *found*. The act of 1888 requires that they shall be inhabitants of the district. But in both cases, an exception is created in local actions, wherein any defendant interested in the *res* may be cited to appear and answer, provided he be not a citizen of the same State with the plaintiff. So, too, in *Mellen* v. *Moline Malleable Iron Works*, 131 U. S. 352, a suit instituted by a creditor to set aside a conveyance of the real estate and a mortgage upon the personal property of his debtor made to secure certain preferred creditors, was held to be a suit brought to remove an incumbrance or lien or cloud upon the property within the meaning of § 8 of the act of 1875, and that the Circuit Court

was authorized to summon an absent defendant, and to exercise jurisdiction over his rights in the property in suit within the jurisdiction of the court.

Indeed, any other construction of this act would practically nullify § 8 of the act of 1875, permitting the publication of absent defendants, since the entire object of the section is to call in defendants who cannot be served within the district, by reason of their absence or non-residence.

It follows, then, that if this be a suit covered by § 8 of the act of 1875, the Circuit Court of the district wherein the land in dispute lies may properly assume jurisdiction. We think that it is such a suit. The bill in question is one for the partition of land, wherein plaintiff avers that he is seized as tenant in common of an estate in fee simple, and is in actual possession of the land described, and after setting forth the interests of the other tenants in common, and alleging that no remedy at law exists to enable him to obtain his share of said lands in kind, or of the proceeds if sold, and that he is wholly without remedy except in chancery, prays for the partition of the land, and the segregation of his own share from that of the others, and incidentally that certain deeds may be construed and, if invalid, may be cancelled, and that he may recover his advances for taxes and expenses. This is clearly a bill to enforce a claim and settle the title to real estate.

(2) Further objection was made to the jurisdiction of the court upon the ground that it appeared from the face of the bill that the title of some of the parties to the land was in dispute; that such titles must be settled before partition could be made; that the interests of several of the defendants were adverse to each other; and that as some of these defendants were citizens of the same State, it would raise controversies beyond the jurisdiction of the Circuit Court to decide. These objections, however, are not within the question certified to us for decision, which is that it had been "adjudged and decreed that this court has not jurisdiction over all of the defendants to this action because they are not all citizens and residents of the district in which the land sought to be partitioned lies, and are not all found in said district at the time of service of

process, although they are all residents and citizens of other States than that in which complainants have residence and citizenship." The objections go not to the jurisdiction of the Federal court as such, but to the maintenance of such a bill in any court of equity in the State of Florida. They are questions proper to be considered on demurrer to the bill, and as bearing upon such questions, the local practice of the State in that regard may become an important consideration. This court has held in a multitude of cases that where the laws of a particular State gave a remedy in equity, as, for instance, a bill by a party in or out of possession, to quiet title to lands, such remedy would be enforced in the Federal courts, if it did not infringe upon the constitutional rights of the parties to a trial by jury. *Clark* v. *Smith*, 13 Pet. 195; *Holland* v. *Challen*, 110 U. S. 15; *Reynolds* v. *Crawfordsville Bank*, 112 U. S. 405; *Chapman* v. *Brewer*, 114 U. S. 158, 171; *Cummings* v. *National Bank*, 101 U. S. 153, 157; *United States* v. *Landram*, 118 U. S. 81; *More* v. *Steinbach*, 127 U. S. 70.

This suggestion is the more important in view of a statute of Florida which authorizes a court of equity in partition cases "to ascertain and adjudicate the rights and interests of the parties," which has apparently been held to authorize the court, in its discretion, to settle the question of title as incidental to the main controversy, or *retain the bill* and refer it to a court of law. *Street* v. *Benner*, 20 Florida, 700; *Keil* v. *West*, 21 Florida, 508.

These questions, however, are not presented by the record in this case, and are mentioned only as giving color to plaintiff's claim that the existence of controversies between different defendants is not fatal to the jurisdiction of the Federal court upon the allegations of this bill.

(3) The objection that Eliza B. Anderson was alleged in the bill to be a resident and citizen of the District of Columbia was met by an amended allegation that Anderson was "a citizen of South Carolina now residing in Washington city, District of Columbia;" and while this allegation was traversed, it must, for the purpose of this hearing, be taken as true.

As this case was appealed under section 5 of the act of March 3, 1891, upon a question of jurisdiction, no other question can be properly considered, and the ·decree of the court below must, therefore, be

*Reversed, and the case remanded for further proceedings in conformity with this opinion.*

MR. CHIEF JUSTICE FULLER dissented.