### KENT v. HONSINGER et al.

#### (Circuit Court, N. D. New York. January 11, 1909.)

1. COURTS (§ 344*)—FEDERAL COURTS—JURISDICTION—LOCAL SUIT—SERVICE ON ABSENT DEFENDANTS.

    A Circuit Court of the United States, in a suit to enforce a lien, can acquire jurisdiction over a defendant, not found in the district, only by following the provisions of section 8 of Act March 3, 1875, c. 137, 18 Stat. 472 (U. S. Comp. St. 1901, p. 513), and making an order directing such defendant to appear and plead by a day certain, designated, and causing such order to be served either personally or by publication. Mere service of a subpœna. although by order of the court, on the president of a corporation defendant in another state, is ineffective to give jurisdiction, and a decree entered on such attempted service is void.

    [Ed. Note.—For other cases, see Courts, Dec. Dig. § 344.*]

2. CORPORATIONS (§ 629*)—DISSOLUTION—SUIT BY STOCKHOLDER FOR DISTRIBUTION—FOLLOWING ASSETS INTO FOREIGN JURISDICTION.

    The sole property of an Iowa corporation having its place of business in that state was sold under a decree foreclosing a mortgage, leaving a surplus, however, after paying the mortgage debt. Defendants, residents of New York, who were owners of a majority of the stock, held a stockholders' meeting. of which the minority stockholders were not notified, elected themselves directors and officers, and removed the books and money of the corporation, which was its only remaining asset, to New York, refusing to make any distribution at demand of the other stockholders. In a suit brought by them in a state court of Iowa, a decree was entered

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

dissolving the corporation in accordance with the laws of the state, and appointing a receiver to take and distribute its assets; but defendants paid no attention to his demand therefor. By the articles of incorporation of the corporation, the holders of preferred stock were given a first lien on its property and assets. *Held*, that a holder of such stock could maintain an original suit in equity on behalf of himself and the others similarly situated in the federal court in the district of defendants' residence in New York to enforce such lien against the assets of the corporation unlawfully brought there by defendants.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2472; Dec. Dig. § 629.*]

**3. COURTS (§ 328*)—JURISDICTION OF FEDERAL COURTS—AMOUNT IN CONTROVERSY.**

In a suit by a stockholder on behalf of himself and other stockholders to secure the distribution of a fund belonging to a dissolved corporation, the entire fund is the amount in controversy for the purpose of determining the jurisdiction of a federal court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 890; Dec. Dig. § 328.*

Jurisdiction of Circuit Courts as determined by the amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Tennent-Stribling Shoe Co. v. Roper, 36 C. C. A. 459.]

**4. CORPORATIONS (§ 312*) — LIABILITY OF OFFICERS — MISAPPROPRIATION OF FUNDS.**

The treasurer of a corporation who unlawfully carried its funds into another state and there kept them is not relieved from liability by turning the same over to a successor elected at a stockholders' meeting held in the latter state which was illegal and void under the laws of the state of incorporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1380; Dec. Dig. § 312.*]

In Equity. Bill of complaint for the appointment of a receiver and other relief.

Grant & Wager and Powell & Powell, for complainant.

S. L. Wheeler, for defendants.

RAY, District Judge. The bill of complaint herein was filed March 5, 1906. The bill on its face purports to be an "ancillary bill for the appointment of a receiver and other relief." Proofs have been taken and a final hearing had.

The bill is filed by Leroy A. Kent, a resident and a citizen of the state of Vermont, also a shareholder in the Vermont Building Company, an Iowa corporation, at all the times mentioned in the bill of complaint, in behalf of himself and all other shareholders similarly situated, against the defendants individually, and also as officers and trustees of said building company, all residents and citizens of the state of New York, upon the following state of facts:

(1) The Vermont Building Company was duly incorporated under and pursuant to the laws of the state of Iowa in September, 1893, having its principal place of business at Sioux City, Western division of the Northern district of said state. It had an authorized capital stock of $95,000, divided into 950 shares of the par value of $100 each, of which 350 shares were issued and denominated "preferred stock," and

600 shares were issued and denominated "common stock," and all thereof was issued and outstanding prior to December 1, 1904, and is still outstanding. The complainant is the owner of 10 shares of such preferred stock. By the articles of incorporation the holders of preferred stock have a first lien on all the property of the company subject to the mortgage. The said company was organized for the sole purpose of acquiring, erecting, taking over, and maintaining certain premises—real estate—in said Sioux City known as the "Masonic Block," used for offices, stores, etc.

(2) Willis T. Honsinger, misnamed "William" in the bill, for the two years prior to the commencement of this action owned 600 shares of the common stock, except 1 or 2 shares transferred to qualify others for directors in the corporation, and 204 shares of the preferred stock of said company, and by reason of such ownership had absolute control of the corporation, the election of its officers, etc., and exercised such control, and the minority stockholders were denied representation on the board of directors.

(3) February 1, 1894, a mortgage of $25,000 was placed on such block, the proceeds being used to pay the construction indebtedness of the company, and such mortgage became and was a lien on such property, which was the only property of said company.

(4) In May, 1903, default was made in the payment of such mortgage, and it was foreclosed, and, pursuant to a judgment of foreclosure and sale entered in September, 1903, the said property was sold October 26, 1903. On such foreclosure sale there was a surplus, after paying the mortgage debt and interest and all costs and expenses of sale, amounting to $9,799.43, which was duly paid over to W. F. Lohr, the secretary and treasurer of said Vermont Building Company. There were also accumulated rentals raising the amount in the hands of said secretary and treasurer to $13,117.50, forming the only assets and property of the said company at the time of the commencement of this action.

(5) The complainant owns 10 shares of the preferred stock, and the other minority stockholders 136 shares thereof.

(6) In September, 1904, a stockholders' meeting was held in Iowa at which defendants, Willis T. Honsinger, Henrietta E. Honsinger, his wife, and S. L. Wheeler were elected sole members of the board of directors of said company, such board being composed of three directors only, and all of such directors so elected were then residents and citizens of the state of New York, of which state they are still residents and citizens. The minority stockholders were not represented at such meeting, and had no part therein, not having been notified thereof.

(7) Immediately on their election as such directors, said Honsingers and said Wheeler held a directors' meeting, and elected said Willis T. Honsinger president of the company, Henrietta E. Honsinger vice president, and S. L. Wheeler secretary and treasurer.

(8) Thereupon the said defendants obtained possession of such funds belonging to said company, and amounting to $13,117.50, from the secretary and treasurer, Lohr, and obtained possession of all the stock books, minute books, books of account and record, and all other

books and papers of said company, and brought said money, books, papers, etc., with them to the state of New York, thus withdrawing and removing the same from the state of Iowa.

(9) Since September, 1904, said company has not had any officer or director or agent residing in or having an office in said state of Iowa, and there has not been any meeting of directors or stockholders in said state, or office of such company therein.

(10) October 27, 1903, and after the money had been paid over to Mr. Lohr, then the secretary and treasurer of said company, an agreement was made and entered into between said Lohr, as secretary and treasurer, and Eric A. Burgess, duly representing seven or eight of the minority stockholders holding preferred stock to the amount of $14,-600, as follows: Burgess, who then contemplated and was about to commence a proceeding to wind up the corporation and place its affairs and property in the hands of a receiver for distribution to creditors, stockholders, etc., agreed not to institute or prosecute such a suit, and both agreed that matters should be left as they were until the year allowed for redemption under the Iowa statute should expire. Lohr, in consideration thereof, agreed that he would deposit the money in an Iowa bank in Sioux City, bearing interest, and retain the funds in said state until October 26, 1904, and would notify Hubbard and Burgess, representing the minority stockholders, of any stockholders' meeting or of any contemplated change in the board of directors or in the management of said company. Relying on this agreement, no proceedings to wind up the corporation or procure the appointment of a receiver, etc., therefor were instituted. Lohr at that time refused Burgess permission to examine the books of the company.

(11) It was also agreed and understood between Burgess and Lohr that a dividend of the said money would be made to the stockholders of the company and its affairs closed up.

(12) Demands were duly made by the said minority stockholders on the officers of the company for a dividend and a distribution of its funds according to law, but no attention was paid thereto.

(13) From the evidence in the case it fully appears that the election of Willis T. Honsinger as president, Henrietta E. Honsinger as vice president and of S. L. Wheeler as secretary and treasurer of said company in September, 1904, was in violation of such agreement, and intended to be; was a scheme to obtain the possession of the funds and property and books and papers of the said company, and remove them from the state of Iowa and from the jurisdiction of the courts of that state, and prevent the proper distribution of the funds to the stockholders entitled thereto under such laws.

(14) Since removing such property to the state of New York, the said defendants have taken no proceedings to wind up the affairs of such company or to properly distribute its remaining property to the parties and stockholders entitled thereto.

(15) The defendants have ignored the rights and interests of such stockholders, and have ignored their demands duly made for a proper and legal disposition of such funds under the laws of the state of Iowa.

(16) On the 9th day of December, 1904, Leroy A. Kent, then own-

ing 10 shares of the preferred stock of said company, filed a bill in equity in the Circuit Court of the United States in and for the Western division of the Northern district of the state of Iowa, of which district said corporation was a resident, and in which district its said real estate was situated, and where it did business in said state so long as business was done there, for the liquidation and winding up of the affairs of said Vermont Building Company, the payment of its debts, if any, and the distribution of its surplus assets to the stockholders thereof according to law and the articles of incorporation. In said suit the said Vermont Building Company, said Willis T. Honsinger, Henrietta E. Honsinger, and S. L. Wheeler were defendants.

(17) The said company at that time had no place of business in said district or state, and no director or officer thereof resided in or was in said state or district, and its property, books, and papers had been so removed to the state of New York by the defendants, where they were held by them as aforesaid.

(18) In such suit, on the filing of such bill, a writ of subpœna in chancery was duly issued by the clerk of said court under the seal thereof, and annexed thereto was the following order and notice, also under the seal of said court and duly signed by the clerk, viz.:

"Memorandum. The within named defendants are notified that unless they enter their appearance in the clerk's office of said court at Sioux City aforesaid, on or before the day to which the above writ is returnable, as above stated, the complaint will be taken against them as confessed, and a decree entered thereon accordingly.

"[Seal.] A. J. Van Duzee,
"Clerk U. S. C. C., Northern District of Iowa,
"By J. H. Bolton, Deputy."

This subpœna and notice or order was delivered to the United States marshal of said district for service December 9, 1904, and such marshal made due return, duly signed, that the defendants could not be found in said district.

(19) Thereupon, and on the 13th day of December, 1904, on motion duly made and on a full showing of all the facts, H. T. Reed, Judge of the United States Circuit Court in said district, duly made and entered an order duly appointing F. L. Eaton, of Sioux City, Iowa, receiver of all the property and assets of said defendant, and authorized and directed him as such to ask for, demand and receive and take possession of all the property, books, and papers of said Vermont Building Company. The said order fixed the bond of such receiver, who duly qualified, gave and filed the bond required, which was duly approved, and entered on the discharge of his duties as such receiver, and duly and repeatedly demanded the property, books, and papers of said company from said president Willis T. Honsinger and said secretary and treasurer, S. L. Wheeler. These demands were ignored by said defendants, and were not and have not been complied with in whole or in part.

(20) December 13, 1904, the complainant duly applied to said judge for an order for the personal service of such writ of subpœna, or for service of same by publication on all such defendants. All the facts were set forth in the application. On the same day the said H. T.

Reed, Circuit Judge, made an order reciting the essential facts, and ordered and directed as follows:

"It is, therefore, ordered that the process of subpœna be served upon said defendant Vermont Building Company by the sheriff of Clinton county, state of New York, and in said state, by reading said subpœna to William T. Honsinger, president of said company, and by delivering to him a true copy of said subpœna. Return of said service to be made upon oath by said sheriff upon a duly certified copy of such subpœna, issued under the seal of this court.
                                                        "H. T. Reed, Judge."

(21) Thereupon said F. W. Lohr applied for leave to intervene and move to dismiss for want of jurisdiction, etc. This motion was granted, and the motion made and denied.

(22) On the 13th day of December, 1904, the following order and process, duly signed by the clerk of said court and under its seal, was issued, viz.:

"United States of America, Northern District of Iowa, Western Division—ss.:

"The President of the United States, to Vermont Building Company:

"We command you that you appear before the Judge of the Circuit Court of the United States, for the Northern district of Iowa, at Sioux City on the first Monday of February, 1905, it being the 6th day of February, A. D. 1905, to answer to the bill of complaint of Leroy A. Kent, filed in the office of the clerk of said court on the 9th day of December, 1904, and then and there to receive and abide such judgment and decree as shall then and thereafter be made, upon pain of such judgment being pronounced as against you by default.

"By an order of the Judge of the Circuit Court of the United States, in and for the Northern district of Iowa, made and entered on December 13, 1904, it was ordered by said court that the process of subpœna herein be served upon said defendant, Vermont Building Company, by the sheriff of Clinton county, in the state of New York, and in said state, by reading said subpœna to William T. Honsinger, the president of said Vermont Building Company, and by delivering to him a true copy of said subpœna, return of said service to be made upon oath by said sheriff, upon a duly certified copy of said subpœna issued under the seal of said court, a certified copy of said order being hereto attached.

"To the Sheriff of the County of Clinton in the State of New York: Returnable to the February rule day, it being Monday the 6th day of February, A. D. 1905.

"Witness the Hon. Melville W. Fuller, Chief Justice of the Supreme Court of the U. S., at Sioux City, this the 13th day of December, A. D. 1904, and of the Independence. the 128th year.
"[Seal.]                              A. J. Van Duzee,
                    "Clerk U. S. C. C., Northern District of Iowa,
                                        "By J. H. Bolton, Deputy.

"Memorandum: The within-named defendant, Vermont Building Company, is hereby notified that unless it enters its appearance in the clerk's office of said court at Sioux City, Iowa, aforesaid, on or before the day to which the above writ is returnable, as above stated, the complaint will be taken against it, as confessed, and a decree entered thereon accordingly.
"[Seal.]                              A. J. Van Duzee,
                    "Clerk U. S. C. C., Northern District of Iowa,
                                        "By J. H. Bolton, Deputy."

(23) The same was served as follows:

"State of New York, County of Clinton—ss.:

"I, A. T. Downing, being first duly sworn on oath state: That I am the duly qualified and acting sheriff of the county of Clinton, in the state of New York; that the within subpœna came into my hands on the 22nd day of De-

cember, A. D. 1904, for service; that on Dec. 22, 1904, I served the same on the Vermont Building Company at Plattsburgh, in the county of Clinton, and state of New York, by reading said subpœna to William T. Honsinger, the president of said company, and by then and there delivering to the said William T. Honsinger, as such president, a true copy of said subpœna.

"All done in the county of Clinton, and state of New York, on the day and year last above mentioned.            A. T. Downing."

(24) The defendants and each of them made default in appearing, and on proof thereof and in due and regular course the case proceeded to a final hearing, and on the said hearing, and on the proofs and evidence duly given, the said court made a decree dissolving the said corporation, and appointing such F. L. Eaton permanent receiver, and fully authorizing and empowering him as such to ask for, demand, and receive and take into his possession all of the money, property and assets, books, and papers, of said company, etc., but dismissing the action as to the Honsingers and said Wheeler, they not having been served. This decree was duly entered, and has not been vacated or set aside, nor has any party or person in interest taken any steps to open or vacate the default or to set aside the said decree.

(25) The said receiver duly qualified as permanent receiver, and duly demanded of the defendants here the possession of such money, books, papers, etc., but the defendants have paid no attention thereto.

(26) Thereupon this suit in equity was commenced for the relief demanded in the bill of complaint. The complainant asks that the defendants be enjoined from disposing of such property, books, papers, etc.; that they be compelled to make discovery thereof; and that an ancillary receiver be appointed here to the end that such property be returned to the state of Iowa and properly and legally disposed of under the laws of that state and the decrees of its courts.

(27) The defendants insist that this suit cannot be maintained as ancillary to the suit in the Circuit Court of the United States, Western division, Northern district of Iowa, on the ground that the decree of that court and its order and decree appointing a receiver are void, as that court never obtained jurisdiction of the parties or any of them or of the subject-matter. They claim there was no valid service of the writ of subpœna, and (2) that, as the property was out of the state, there was no jurisdiction obtained of the subject-matter.

The defendants also claim that this suit cannot be maintained in this court as the amount in controversy is less than $2,000. Before going into the laws of the state of Iowa it is perhaps well to consider whether or not the decree of the Circuit Court of the United States entered in Iowa has any force or validity. Is it a nullity, void? Service of the subpœna according to law was of course necessary to give the court jurisdiction. Congress has made no general provision as to the service of process, but, except in special cases where substituted service or service by publication is authorized, the service must be made in the district in which issued. 1 Rose, Code, §§ 853 and 971a. In common-law actions commenced in the federal courts, the local state practice as to mode and sufficiency of service controls. Rev. St. U. S. § 914 (U. S. Comp. St. 1901, p. 684); 1 Rose, Code, § 853a, and see cases there cited. But in equity actions the rule is different. Here

167 F.—40

the bill is filed, and thereupon a subpœna issues. 1 Rose, Code, § 967. It must be served within the district where issued, except in certain cases where substituted service is permitted. 1 Rose, Code, § 971a. See Equity Rules, 11 to 16. Service of the subpœna in equity cases may be made by publication, or by personal service without the district in which issued, in the following cases and in the following manner, viz.:

"When in any suit, commenced in any Circuit Court of the United States, to enforce any legal or equitable lien upon, or claim to, or to remove any incumbrance or lien or cloud upon the title to real or personal property within the district where such suit is brought, one or more of the defendants therein shall not be an inhabitant of, or found within, the said district, or shall not voluntarily appear thereto, it shall be lawful for the court to make an order directing such absent defendant or defendants to appear, plead, answer, or demur, by a day certain to be designated, which order shall be served on such absent defendant or defendants, if practicable, wherever found, and also upon the person or persons in possession or charge of said property, if any there be; or where such personal service upon such absent defendant or defendants is not practicable, such order shall be published in such manner as the court may direct, not less than once a week for six consecutive weeks; and in case such absent defendant shall not appear, plead, answer or demur within the time so limited, or within some further time, to be allowed by the court in its discretion, and upon proof of the service or publication of said order, and of the performance of the directions contained in the same, it shall be lawful for the court to entertain jurisdiction, and proceed to the hearing and adjudication of such suit in the same manner as if such absent defendant had been served with process within the said district; but such adjudication shall, as regards such absent defendant or defendants, without appearance, affect only the property which shall have been the subject of the suit and under the jurisdiction of the court therein, within such district, and when a part of the said real or personal property against which such proceeding shall be taken shall be within another district, but within the same state, said suit may be brought in either district in said state."

See Act March 3, 1875, c. 137, § 8, 18 Stat. 472 (U. S. Comp. St. 1901, p. 513).

That the equity action in the United States Circuit Court of the Western division of the Northern district of Iowa was one to enforce a legal or equitable claim on specific personal property cannot be doubted. The articles of incorporation of the Vermont Building Company, in evidence, expressly declare:

"It is hereby provided and determined that three hundred fifty shares (350) of one hundred dollars ($100) each shall be denominated 'Preferred Stock' and six hundred shares of one hundred dollars ($100) each shall be denominated 'Common Stock.' The holders of said preferred and common shares of capital stock shall have the rights and privileges usually pertaining to holders of such stock and such other rights and privileges as are further set forth and guaranteed by these articles of incorporation. * * *

"The holders of said preferred shares shall be entitled to receive out of any moneys belonging to said corporation semiannual dividends at the rate of six per cent. per annum on the amount of each share, from the net profits of the business conducted, in priority and preference to the payment of dividends to the holders of preferred or common stock.

"It is further provided that the holders of said preferred shares of stock shall be entitled to a first lien to the amount of their respective shares upon all the real and personal property of this corporation subject only to the lien of a first mortgage not exceeding thirty thousand dollars ($30,000) as hereinafter provided."

The mortgage had been paid, and the purpose of the action was to secure a winding-up of the corporation and an enforcement of this lien on the property by securing a distribution thereof to the holders of the preferred stock and consequently the holders of this lien. The difficulty with complainant's case is that he did not follow the statute in securing authority to serve the subpœna without the state of Iowa. In order to serve the corporation, it was necessary to serve on some one personally or by publication. I do not think the corporation was a nonresident of the state of Iowa, or that the corporation itself was in fact absent from the state. The fact that the officers thereof were absent from the state, residents of the state of New York, or that they had taken the property, books, and papers wrongfully to New York, did not deprive the courts in Iowa of jurisdiction of the subject-matter. The corporation was still a resident of the state of Iowa. It was not, however, found therein, and it did not voluntarily appear. It came within the category of absent defendants. It was competent in such case for the court to make an order directing such absent defendant or defendants to appear, etc., by a day certain, to be designated, and there might have been a service by publication or personal service of the order as directed by the court. But the court neither made such an order nor required publication. All the court did was to direct a personal service of the subpœna on the president of the company in the state of New York by the sheriff of Clinton county. This order was not served, and the order made did not require either the president or the corporation to appear, plead, answer, or demur by a day certain. The subpœna was not an order of the court, neither was it a substitute therefor. I think the decree entered by the Circuit Court of the United States in that suit in the Northern district of Iowa was a nullity.

There are many cases bearing on the question of the sufficiency of such service, but I find no case indicating that the service made was sufficient. See 1 Rose, Code, § 856, subsec. "c"; Greeley v. Lowe, 155 U. S. 58, 71–75, 15 Sup. Ct. 24, 39 L. Ed. 69; Goodman v. Niblack, 102 U. S. 556, 563, 26 L. Ed. 229. See, also, Bracken v. Union Pac. Ry. Co., 56 Fed. 447, 5 C. C. A. 548; U. S. v. American Lumber Co. (C. C.) 80 Fed. 309.

But does this dispose of this case adversely to the complainant? He, in behalf of himself and all others similarly situated, a citizen and resident of the state of Vermont, brings this suit against the defendants, all residents and citizens of the state of New York, to reach and procure, in some lawful mode and by lawful means, the preservation and subsequent proper application and distribution of the funds and property of the Vermont Building Company, an Iowa corporation. It appears, and proof has been permitted, that since the commencement of this suit in equity a suit has been brought in the district court of the state of Iowa to dissolve the corporation and wind up its affairs. That suit has gone to a final decree, and in that suit, bill filed October 3, 1907, wherein Leroy A. Kent was plaintiff and Vermont Building Company, Willis T. Honsinger, Henrietta E. Honsinger, and S. L. Wheeler were defendants, service of process was duly made on all the defendants under and pursuant to the laws of the state of Iowa,

and the decree entered November 9, 1907, so finds and recites. The statutes of Iowa on the subject and proofs of such service are in evidence. This suit in equity is not based upon that decree, but the judgment roll and record were admitted in evidence to show the present status of the company and of its property. That decree of the state court dissolves the corporation, appoints F. L. Eaton of Sioux City, Iowa, receiver, and directs and authorizes him as such to ask for, demand, and receive all the property, books, papers, etc., of the company, and directs the defendants and all officers of the company to surrender and deliver same to the said receiver, who has duly qualified as such, and also forbids the defendants to interfere with same in any manner except to surrender same to the receiver. To the commands of this decree of the state court of the state of Iowa the defendants pay no attention whatever, ignoring same and all demands thereunder.

The evidence establishes that the defendants wrongfully and unlawfully removed all the property of such corporation, including its books and papers, from the state of Iowa to the state of New York, where, so far as appears, they now hold same. During the pendency of this action they have so held all such property, and at the time of the final hearing they had not surrendered same to the receiver or returned same to the state of Iowa. In bringing the property, books, and papers to the state of New York, and in not maintaining an office in Iowa, etc., the defendants acted in violation and defiance of the laws of that state. This court has jurisdiction of the property, which is in fact in this state, and of the defendants. It ought to be able to hold, protect, and preserve the property and transmit it to the Iowa court for distribution under the laws of that state. It is immaterial whether the defendants are solvent or insolvent. Conversion or misappropriation by a responsible party is no less obnoxious to the law and to a court of equity than conversion and misappropriation by an insolvent person. These preferred shareholders have a lien on this specific property, and they may protect and preserve the lien, and, to do so, the property itself. It is not necessary to relegate them to a common-law action for damages, and it is no defense in such a case as this to say that the complainant and those in whose behalf he sues may have a remedy at law for damages. The stockholders are entitled to their liens and to this property. An appeal to equity is proper where equitable rights are involved, of which the court takes equitable cognizance. Such is this case. The question whether this is an original bill or purely ancillary is determined by the bill itself, and not the name given it by the pleader. Raphæl v. Trask, 194 U. S. 277, 24 Sup. Ct. 647, 48 L. Ed. 973; Dunn v. Clarke, 8 Pet. 1, 8 L. Ed. 845.

This bill, while it sets out the decree in the suit in Iowa, is essentially an original one, and, as it states a cause of action in equity aside from allegations as to that decree, the suit may be maintained. But that suit in Iowa has never been dismissed or discontinued, and the receiver appointed therein by the order of the court has not been discharged, nor has the order appointing him been vacated or set aside. We have, then, a suit pending with bill filed in the proper Circuit Court of the United States in the state of Iowa, in the district of the residence of the corporation, with a receiver duly appointed and

qualified and seeking possession of the property in question. The complainant here does not seek possession of this property himself. All he demands is that it be taken and transmitted to the proper court in Iowa, there to be dealt with according to law.

The laws of Iowa provide that if the corporation transacts business in the state the articles shall fix the principal place of business, which shall be in the state, in charge of an agent of the corporation, at which place it shall keep its stock and transfer books and "hold its meetings," and that in January of each year it shall file with the Secretary of State a list of its officers, and any change in the location of its place of business made by a vote of the stockholders. Also, if the corporation does not do business in the state, then it is to designate in writing a person on whom service of process, etc., may be made, and file same, etc.; also, that courts of equity may dissolve and close up the business of a corporation and appoint a receiver. The defendant Wheeler testifies that in 1905, and in the following year, meetings of the stockholders and directors were held in the state of New York, and that in 1905 the defendant Henrietta Honsinger was elected secretary and treasurer at one of these meetings, and that he then paid over the said money to her. I regard such meetings held in the state of New York in defiance of the articles of incorporation and of the laws of Iowa as illegal and invalid. Wheeler cannot, in my judgment, exonerate himself from liability by or through such a transaction. In view of all the facts this transaction should be regarded as a misappropriation of and an attempt to dissipate the funds in defiance of the rights of the holders of preferred stock.

As to the amount in controversy, it clearly exceeds $2,000, exclusive of interest and costs. Clearly all of the funds represented by 146 shares of the preferred stock, or about $5,500, is in controversy here. And in my judgment the entire fund is in controversy within the meaning of the statute. Assume that the corporation has been dissolved by the Iowa courts, its affairs are not wound up, but are in process of being wound up, and the money or property should be returned to that jurisdiction, and may be, I think, held for that purpose. I doubt the power of the Circuit Court of the United States in the Northern district of Iowa to make a decree dissolving the corporation. It has no such jurisdiction unless specifically conferred by some statute of that state. Conklin v. United States Shipbuilding Co. (C. C.) 140 Fed. 219, and cases cited. If so, then this decree of the Circuit Court of the United States referred to was and is void irrespective of service. But that fact does not defeat this action. Dodge v. Woolsey, 18 How. 331, 15 L. Ed. 401; Hawes v. Oakland, 104 U. S. 450, 26 L. Ed. 827; Acken, as Director, etc., v. Coughlin et al., 103 App. Div. 1, 92 N. Y. Supp. 700; Sage v. Culver, 147 N. Y. 241, 41 N. E. 513; Nash v. Hall, 11 Misc. Rep. 468, 32 N. Y. Supp. 701; Watkins v. Watkins, etc., 17 Misc. Rep. 227, 40 N. Y. Supp. 1042.

Here the defendant Willis T. Honsinger and his wife (as Wheeler testifies) are in possession of all the books and papers and property— such property being in money—of the corporation in the state of New York, where they reside, and of which state they are citizens. The corporation is practically dissolved; it has ceased to do business; it

was organized for a special purpose, and that purpose has been accomplished. The Honsingers have violated the laws of Iowa by removing the books, etc., to New York, by failing to maintain an office or place of business in Iowa, and in other respects, and they absolutely disregard and ignore the rights of the preferred stockholders. It is a case where a stockholder suing for himself and all others similarly situated may maintain an action to protect and preserve such property, etc., without a demand on the officers, the Honsingers, who are the wrongdoers, to bring suit. Equity does not require the doing of a vain thing. See cases cited, Carpenter v. N. Y. and N. H. R. R. Co., 5 Abb. Prac. 277; Sage v. Culver, 147 N. Y. 241, 246, 41 N. E. 513. As said by the court in Sage v. Culver, supra:

"When the corporation is exclusively under the control of the trustees and officers whose acts and management are questioned, a demand that the corporation bring the action would be idle and fruitless, and in such cases equity permits the stockholder to bring the action in his own name."

Brinckerhoff v. Bostwick, 88 N. Y. 52; Leslie v. Lorillard, 110 N. Y. 519, 18 N. E. 363, 1 L. R. A. 456.

As to the defendants here, Willis T. Honsinger was served, and he is the president of the company. The defendant intended was actually served. There may be an order amending the record accordingly, and a finding to that effect.

While this court cannot appoint a general receiver of the corporation, it can appoint a receiver of this fund, with power to hold, protect, and preserve it for future disposition; payment to such person or persons as the Iowa court shall designate; and it can enjoin and restrain the defendants from disposing of it; and it can compel the defendants to render an account of it and pay it over to such receiver.

There will be a decree accordingly. The court will name a special master and receiver when the decree is entered.