**CHICAGO AUDITORIUM ASS'N v. CRAMER et al.**

(District Court, N. D. Illinois, E. D. December 29, 1925.)

No. 3586.

**I. Action ⊝6—Questions not involving rights of persons or property controverted in case presented to court will not be decided by court.**

Federal equity court is without power to construe leases, to establish rule controlling predicted future conduct, where rights of persons or property are not controverted in case before court.

**2. Courts ⊝262(I), 335(I)—Jurisdiction of federal courts, as affected by state law, stated.**

Remedies afforded and procedure in federal equity courts are not determined by local laws or decisions, but by general usages of equity having uniform operation, and in general is jurisdiction of High Court of Chancery in England at time of adoption of Constitution and original Judiciary Act, unless subsequently changed by Congress, but they may administer enlarged equitable rights given by state statute, unless to do so would contravene distinction between law and equity.

**3. Quieting title ⊝I—Kinds and character of "bills of peace" stated.**

"Bills of peace" are those to establish right controverted by numerous parties having distinct interests originating in common source, wherein equity interferes to avoid multiplicity of suits, and those wherein plaintiff's right to realty or his possession has been unsuccessfully assailed in different actions in ejectment, and wherein plaintiff is liable to further similar actions, in which equity interferes to quiet possession in plaintiff.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Bill of Peace.]

**4. Quieting title ⊝I—Suit to construe leases held not sustainable as bill of peace. ·**

Suit by lessee for construction of long-term leases from different lessors, to determine its right to remove building from premises incidental to erection of new improvement of greater value, held not sustainable as bill of peace.

**5. Quieting title ⊝I—Nature of "bill quia timet" stated.**

"Bill quia timet," or to remove cloud on title, seeks to prevent future controversy by removing existing causes of controversy as to title, and generally plaintiff must be in possession, except where defendants are numerous and have established title at law, or where it is founded on undisputed evidence, or long-continued possession.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Bill Quia Timet.]

**6. Quieting title ⊝2—Bill to remove cloud on leasehold interest maintainable.**

In view of Judicial Code, § 57 (Comp. St. § 1039), under general usages of equity, bill to remove cloud on title is maintainable in case involving leasehold interest, if suit is otherwise well founded.

**7. Landlord and tenant ⊝70—Lease for years is "chattel real."**

Lease for years is "chattel real," and conveys interest in land, and, while having some of attributes of personalty, it is, in many respects, treated as real estate.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Chattels Real.]

**8. Quieting title ⊝3—Bill to quiet title not maintainable in federal court to dispel mere verbal assertions of interest, or where face of record shows no title.**

Under usages or equity controlling federal courts, and in absence of enlargement of equitable rights by state statutes, bill to quiet title will not lie to dispel mere verbal assertions of interest, nor if same record relied on to establish title shows no title.

**9. Equity ⊝3—Equitable ground is necessary to maintenance of equity action.**

Equitable action must be maintained on some equitable ground, however broad and elastic the relief may be.

**10. Quieting title ⊝4—Suit to establish lessee's right to remove building and erect new one held not maintainable as bill to remove cloud; lessee's remedy being action at law.**

Suit to establish lessee's right under long-term leases from different lessors to remove existing building, incidental to erection of new one of greater value not impairing lessor's security, on adequate security during construction, was not maintainable as bill to remove cloud under general usages of equity, notwithstanding lessor's verbal assertions that such removal would constitute waste, constituting ground of forfeiture, since, if construction of lease was doubtful, lessee's remedy was by action at law.

**II. Courts ⊝262(3)—Federal equity courts have power to remove what state laws declare to be clouds on title.**

Federal equity courts have power to remove what state laws declare to be clouds on title.

**12. Courts ⊝262(2)—Requisites to federal court's jurisdiction of suit to remove cloud founded on state statutes, stated.**

Suit to remove cloud founded on remedial state statutes, to be within federal court's jurisdiction, must be within general class over which such courts have jurisdiction, and does not lie where there is plain, adequate, and complete remedy at law, and there can be no commingling of legal and equitable remedies, or substitution of latter, whereby constitutional right of trial by jury in actions at law is defeated.

**13. Quieting title ⊝7(I)—Equity will not take jurisdiction to remove "cloud on title," where defect is apparent on face of record.**

"Cloud on title" is a claim, apparently valid, which may be removed by extrinsic evidence, and equity will not take jurisdiction to remove cloud, where there is no defect in title, except

what is apparent on face of instrument under which title derived.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Cloud on Title.]

**14. Vendor and purchaser �köö3(2)—Long-term lease is not "sale."**

Long-term lease, with payment of annual rent, is not "sale," which is a grant of absolute ownership.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Sale.]

**15. Quieting title �köö19—Illinois statutes authorizing suits to quiet title and remove clouds not applicable to suits involving construction of leases.**

Chancery Act Ill. § 50, as amended by Laws 1911, p. 253, authorizing suits to quiet title and remove clouds from realty, is not applicable to controversy between landlord and tenant relating to construction of leases.

**16. Quieting title �köö46—Plaintiff's remedy not limited by phraseology in pleading, or by specific form in which claim for relief is presented.**

Remedy of plaintiff, seeking to remove cloud on title, should not be limited by phraseology in pleading, nor by specific form in which claim for relief is presented.

**17. Equity �köö38—Suit to establish lessee's rights under lease held not maintainable as one to enjoin threatened breach of contract.**

Suit to establish lessee's rights to remove building on leased premises and to erect new one thereon, merely involving construction of lease, which was insufficient as bill to remove cloud, could not be sustained as one to enjoin threatened breach of contract.

**18. Injunction �köö58—Suit to enjoin threatened breach of negative covenant is governed by rules applicable to suit for specific performance of affirmative covenant.**

Suit to enjoin threatened breach of negative covenant in contract is governed generally by same principles as suit for specific performance of affirmative covenant, and, if right is doubtful, injunction is improper.

**19. Equity �köö38—Bill to establish lessee's rights under lease held not maintainable as one to enjoin forfeiture.**

Bill to establish lessee's rights to remove building on leased premises and to erect new one thereon, merely involving construction of lease, and which which was insufficient as bill to remove cloud, could not be sustained as one to enjoin forfeiture, where no forfeiture had been declared, nor cause of forfeiture stated in bill, nor notice of breach of covenant given.

**20. Equity �köö43—Some wrong must be shown for which plaintiff is entitled to redress before rule as to inadequacy of legal remedy applies.**

Rule that absence of precedents or novelty in incident is not obstacle to jurisdiction of equity court applies to remedy only, and, before rule as to inadequacy of remedy at law is applicable, some wrong must be shown, for which plaintiff is entitled to redress.

In Equity. Suit by the Chicago Auditorium Association against Ambrose Cramer, trustee, and others. Bill dismissed without prejudice.

Fisher, Boyden, Kales & Bell, of Chicago, Ill., for plaintiff.

Sonnenschein, Berkson, Lautmann & Levinson, of Chicago, Ill., for intervening petitioners Lister.

Butz, von Ammon & Marx, of Chicago, Ill., for intervener Bullock.

Hamlin, Topliff & Cooper, Follansbee, Shorey & Schupp, Elting & Judson, George W. Gordon, King, Brower & Hurlbut, McCulloch & McCulloch, and Hay & Brown, all of Chicago, Ill., and Perkins, Malone & Washburn, of New York City, N. Y., for defendants.

Louis M. Greeley, Roswell B. Mason, and Henry Russell Platt, all of Chicago, Ill., guardians ad litem.

WILKERSON, District Judge. Plaintiff is the lessee under leases covering the ground upon which the Chicago Auditorium Building is erected. The leases cover five separate parcels of land and were executed in 1887. In two of the leases Wirt D. Walker was the lessor, and Mark Skinner Willing, as trustee, and other defendants, as set forth in the pleadings, have succeeded to his interest. In another of the leases Walter G. Peck, Clarence I. Peck, and Ferd W. Peck were the lessors, and William A. Slater, as trustee, and other defendants, as set forth in the pleadings, have succeeded to this interest. In two of the leases Studebaker Bros. Manufacturing Company was the lessor, and Emily C. Chapin and other defendants, as set forth in the bill, succeeded to this interest.

In essential respects the provisions of the leases are the same. They are for the period of 99 years. The lessee agrees to forthwith begin and to build on the premises a substantial and solid fireproof building of brick, stone, iron, steel, and tile, and such other materials as are necessary and usual in fireproof buildings in the city of Chicago, the same to be in all respects in accordance with the building ordinances of the city of Chicago, and to carry on and prosecute the erection of the building with all reasonable dispatch, and to have the same completed before August 1, 1889; the building in the character of the materials to be used in its construction, to be as follows:

"All columns shall be of iron, stone, or brick, and all iron and steel columns and girders shall be fireproofed with a covering of porous terra cotta or hollow tile, or like

material; all beams, joists, and roofing beams and joists shall be of iron or steel; all constructional floors shall be arches of hollow tile or like materials; all partitions shall be of brick or hollow tile; the roof shall be iron, brick, or hollow tile; the stage of the auditorium in said building, however, may be built of such material and in such manner as may seem most expedient to party of the second part."

· In one of the Walker leases it is provided that the building to be built on the premises shall cost not less than $475,000; in the other it is provided that the building shall cost not less than $275,000. In the Peck lease it is provided that the building on the premises shall cost not less than $400,000. In the Studebaker leases it is provided that the building to be erected on each parcel shall cost not less than $50,000. The leases provide for fixed rentals until August 1, 1906, after which date the rent is to be 6 per cent. upon the value of the premises, exclusive of improvements; such valuations to be made on August 1, 1906, and every 10 years thereafter, in the manner provided in the leases.

The leases contain the usual covenants for payment of water rates, taxes, and assessments, against assignment without consent of the lessor, for the payment of rent, and for the termination of the lease in case of default of the lessee in complying with the covenants of the lease. Each of the leases contains the following provision:

"And the said party of the second part further covenants and agrees that it will at all times during the term hereby demised, at its own proper cost and charges, keep the building situated upon said demised premises, and all appurtenances belonging thereto, in good repair, and in a safe and secure condition, and that it will keep all rooms in said building in a good, safe, clean, and tenantable condition and repair during the entire term of this lease."

The leases contain provisions for the insurance of the premises and with reference to the collection and use of the insurance in case of loss. It is provided:

"If said buildings, or any part thereof, shall at any time or times during the continuance of the term hereby granted, be destroyed or damaged by fire, the party of the second part shall rebuild or repair the same upon the same plan as before the said fire happened, or such other plans as by the party of the first part shall be approved in writing, and have the same rebuilt and ready for occupancy within two years from such loss or destruction; and that as often as said buildings or improvements shall be · burnt down or damaged by fire, all and every sum or sums of money which shall be recovered or received by the party of the second part for or in respect of said insurance, shall be laid out by it in rebuilding or repairing said building."

The leases also provide:

"That in the event of the determination of this lease at any time before the expiration of the term of 99 years hereby demised, for the breach of any of the covenants herein contained, then and in such case all buildings, fixtures and improvements, then situate upon said demised premises, shall belong to and be the property of said lessor, and no compensation therefor shall be allowed or paid to said lessee."

The leases provide for appraisal at the expiration of the term of the "actual cash value of any and all building or buildings, and any and all improvements that are then situate and standing upon said premises," and for securing to the lessee reimbursement for such value. It is provided:

"In making said appraisement of the value of said improvements, the appraisers or court shall take into consideration the suitableness of said improvements as to character and condition to secure the largest returns from the demised premises to the owner thereof, and the appraised value of said improvements shall in no case exceed the difference between the value of the entire property, land and improvements as a whole, and the value which said demised premises would then have, if vacant."

Upon the execution of the five leases, the lessee, with the knowledge and consent of the lessors, erected the Auditorium Building upon the five parcels of ground covered by the leases. The building is a single structure, and is not separable into parts apportionable to the separate leaseholds. The building was completed about December 1, 1889. In 1891 the Walker and Peck leases were modified. The term in each case was extended for an additional period of 100 years, so that the leases expire on August 1, 2085. The provisions for revaluation were eliminated and a fixed rental provided for the entire term of the leases. It was provided that all the covenants, agreements, conditions, and provisions of the original leases, except as modified by the agreement of 1891, should continue in full force and effect.

The facts, averred in the pleadings and established by the evidence, upon which plaintiff bases its claim for relief in equity, are as follows:

The Auditorium Building was erected before the development of modern steel con-

struction. It is only 10 stories in height. Many more stories are required to produce an adequate return upon the ground value in central districts of cities like New York or Chicago. The Auditorium represents an obsolete type of construction. It has walls of brick and stone resting upon floating foundations. The foundation for a modern steel construction building of the best type should consist of caissons extending down to bed rock. The exterior walls of the Auditorium are what are commonly known as bearing walls, which are constructed of masonry throughout; whereas, the exterior walls of a modern fireproof building of the highest type are known as screen walls, and are supported upon the construction of the various floors, which are in turn supported by steel columns carrying the weight of the entire building. The columns used in the construction of the Auditorium are of cast iron, having lugs with which to support the beams and girders of the floor systems, which are bolted thereto; whereas, the columns in a modern fireproof building of the highest type are built up of structural steel members, which are riveted together and proportioned to carry the load thrown upon them. The beams and girders of the Auditorium have only bolted connections with the columns; whereas, in modern fireproof construction of the highest type, all joints are made with splice plates, lugs, and angles, with riveted connections for rigid fastening and accurate predetermination of the strength and construction.

The engineering formulas now employed in the construction of a modern fireproof building of the highest type state the limitations of the steal stresses and of the strength of materials used, but such formulas were not complied with in the construction of the Auditorium Building, for the reason that they had not been determined. Owing to the lack of experience and lack of precedents, the methods of design and construction actually employed in the erection of the Auditorium, while the best and most advanced known at the date of its construction, were inadequate and improper from a modern point of view.

Since the construction of the Auditorium, the value of the land upon which it is built has increased greatly. The character of the property in its neighborhood has changed completely. The west side of Michigan avenue is in great demand for large and expensive buildings for hotels, offices, and stores. Upon a 6 per cent. basis, the rents fixed in the leases represent a valuation of $637,500. The present value of the fee of the property in question (exclusive of the building) is more than $3,500,000. The present value of plaintiff's leasehold interest, estimated upon a 5 per cent. basis, is more than $2,000,000. The net excess of the aggregate computed annual rental values on the basis of the above percentage and valuations over the actual rents now payable under the leases is more than $100,000. The rental value of the Auditorium property, unincumbered and unimproved, taken as a unit for building purposes, is substantially greater than the aggregate rental value of the properties taken separately.

There has been a progressive increase of the burden of taxes payable by the lessee. In 1890, the taxes were $22,707.78; in 1923, they were $145,289.23. The operation of the building has not been profitable. Plaintiff has with difficulty been able to pay the ground rent due under the leases, the taxes, interest on bonded indebtednesses, and other expenses of operation, and to retire a small amount of its bonds. If the actual depreciation of the building at the present time is taken into consideration, substantially the only value left with which to liquidate the principal of the bonded indebtedness of $1,375,000, or to return to the stockholders any part of the investment represented by its capital stock, is the value of its leasehold interests, as represented by the difference between the present annual rental value of the fee, unimproved and unincumbered, and the ground rentals accruing from the leasehold interests to the owners of the fee of the property.

In order to secure adequate returns upon the value of the leasehold interests, the present building must be torn down and a new one erected. Such returns can be realized only from a building of greatly increased height, which will provide the maximum obtainable number of floors, with the maximum amount of floor space, and such a building would require a modern steel skeleton structure, supported on caisson foundations, and carried to the maximum height now allowed by law. The present building is now 35 years old and is obsolete in its construction. Its general construction consists of heavy inclosing walls of masonry, with a skeleton interior construction of cast iron columns and steel or wrought iron trusses. There has occurred a large amount of settlement in the structure, amounting in some places to 22 inches; the maximum of settlement has occurred under the heavy masonry walls, while the skeleton interior construction has, by comparison, settled to a much less extent, and these local differences in

settlement have created a distortion in the interior skeleton construction, which has resulted in the fracturing of some of the struts and connections in the framework of the interior construction, and in the cracking of masonry, plaster, and other finished surfaces. By reason of the fact that most of the metal used in the interior construction is iron, further fractures are likely to occur.

Because of fundamental defects in the construction of the building, it will continue to deteriorate, and there is reasonable ground to believe that it will become unsafe. It is impossible for engineers to make a definite forecast as to how many years will elapse before that stage is reached. When that stage of deterioration shall have been reached, it will not be possible to make the building safe and conformable to the municipal regulations, except at a cost so great that the earnings from the building as reconstructed would not represent an adequate return upon the investment. By reason of the fact that the masonry bearing walls require large pier areas to support the loads of their own weight and the loads from the floor construction thrown upon them, the window areas do not afford adequate light for hotel and office purposes; the finishing is old-fashioned and out of date; the elevators are inefficient and inadequate; the plumbing, drainage, and water supply systems are inadequate, antiquated, and unsound; the heating and wiring systems are inefficient. In short, the building has passed into the class of old buildings, which are being torn down in the central district of Chicago to make place for structures of the size and kind necessary to earn a fair return upon the value of the land on which they are erected. The highest and best use of the property covered by the leases in suit, at the present time and for many years to come, is one involving the construction of a new building of greatly increased height and capacity. Any building adequate to meet these requirements would necessarily be a modern steel-skeleton structure, carried to the maximum height now permitted by law and supported on caisson foundations. The cost of such a building would be between $10,000,000 and $15,000,000.

Plaintiff desires and proposes to remove from the Auditorium property the present building, and to erect in its place an adequate, modern steel-construction building at a cost of not less than $10,000,000, adapted for a hotel, auditorium, and safety deposit vaults. Plaintiff has under consideration plans for such a building, and has assur-

ances from financial institutions that, if its right under its leases to remove the old building and erect the new one can be established, the necessary funds can be procured. The purpose of this suit is to establish plaintiff's right, under the covenants and conditions of the leases above described, to tear down and remove the present improvement as a part of and incidental to the erection of a new improvement of equal or greater value, not impairing in any way the security and property right of the lessors, upon furnishing proper and adequate security during the removal of the present improvement and until the completion of the new improvement.

The averment of the bill upon which the jurisdiction of a court of equity is invoked to construe the leases is as follows:

"Defendants * * * claim and assert, and by reason of such claim and assertion certain persons with whom your orator is obliged to deal in the financing of its aforesaid plans are fearful, that the present building cannot be removed without a violation of the terms, covenants, and conditions of said leases, even though such removal be incidental to and a part of the erection of a new and better building upon the same property, and even though adequate security be offered and given to protect the lessors from any loss of value to the property which may occur while the old improvement is being wrecked and removed, and before the new improvement is completed; and such defendants claim, and said persons with whom your orator has to deal are fearful, that, under the terms, covenants, and conditions of the leases, if a destruction of the present improvement occurs or is attempted, even though that destruction be incidental to and a part of the act of erecting a new and better improvement on the same property after adequate security as aforesaid shall have been given, it will constitute waste and a ground of forfeiture of the leases. The aforesaid claims, fears, and uncertainties respecting the rights of the parties to said leases, based upon the terms, covenants, and conditions of the leases of said property, have greatly impaired the value of the leasehold interests of your orator, and have made them unmarketable, and have prevented your orator from exercising its rights with respect to said leasehold interests, so as to secure therefrom the highest and best use of its interest in the land; and the terms, covenants, and conditions of said leases, in so far as they give color to said claims, fears, and uncertainties, are clouds upon the title of your orator, for the removal of and relief against

which your orator has no adequate remedy in a court of law. Your orator well hoped that the defendants owning or interested in the fee of said Auditorium property would consent to the replacement of the present building by a new and more valuable improvement so as aforesaid contemplated, which would be manifestly beneficial to all parties interested in said leases; but said defendants, or some of them, have refused to give such consent, or to forego the claims constituting as aforesaid a cloud upon your orator's title, unless your orator would pay them large sums of money, in addition to that which is payable to them by the terms of said leases."

The proof shows that plaintiff undertook to negotiate in a general way with some of the defendants concerning the removal of the old building and the erection of a new one. No definite plans were submitted; no specific demand was made. There was a discussion of the terms of the leases, and defendants and their attorneys asserted that the removal of the old building would be waste, and would be a ground of forfeiture. No concrete act of plaintiff was proposed, and no definite threat of forfeiture was made by defendants.

The answer of Mark Skinner Willing, trustee, et al., states:

"These defendants admit that they claim and assert that the present building cannot be removed without a violation of the terms, covenants, and conditions of the leases, if they be valid as leases, even though such removal may be incidental to and a part of the erection of a new and better building upon the same property, and even though alleged adequate security be offered and given to protect the defendants from any loss of value to the property which may occur while the old improvement is being wrecked, and before the new improvement is completed."

In the answer of William A. Slater et al. it is stated:

"These defendants aver that, if plaintiff destroys the present improvement, whether for the purpose of erecting a new one or otherwise, such destruction will constitute waste, and will give the owners of the land described in said Peck lease, according to the terms thereof, the right to reenter and repossess themselves of such land, free of any and all claims or rights of plaintiff."

The specific relief to which plaintiff claims it is entitled is stated as follows:

"That this court will remove from the several leasehold interests of your orator the above-mentioned claims and clouds, based upon the alleged force and effect of the terms, covenants, and conditions of the aforesaid leases, and will fully quiet and establish the title of your orator to the said leasehold properties, with full right on the part of your orator to tear down and remove any and all buildings which for the time being may be upon said premises, upon giving proper security as the court may direct, all as a part of the act of erecting upon said premises a new, suitable, and more valuable building and improvement, and one not in any way impairing the security of the lessor in said several leases, or of their assigns and successors; * * * that the court will likewise, upon your orator giving such security as the court may direct for the protection of the defendants herein, enjoin and restrain the defendants' interest in the fee of said properties, as owners or otherwise, from declaring or attempting to declare any forfeiture of any leasehold interest owned or held by your orator, in which said defendants or any of them are interested as aforesaid, on account of any removal or destruction of the building or improvements upon the land subject to said leases; that said defendants may also be enjoined from taking any steps to prevent your orator from tearing down or removing the present building or improvement located upon any leasehold interest now vested in your orator, in which the defendants or any of them are lessors, or the assigns or successors of or interested under the original lessors. * * * *"

Referring to the provision in the leases which obligates the lessors to purchase the building at the end of the term, plaintiff, in its bill, makes the following offer:

"In order to remove such questions, if any, as may properly arise about the liability of the owners of the fee to purchase and pay for larger or more expensive buildings and improvements than are now upon said properties, your orator is willing and hereby offers, in case of the replacement by your orator of the present building by larger or more costly improvements, to abide by any conditions which to the court shall seem equitable with respect to such provisions, and to waive, if and so far as such waiver shall be deemed by the court necessary or proper, its right and claim under the above-mentioned provisions of said leases to payment at the termination thereof for the said improvements; and your orator hereby consents that any provision to that effect deemed by the court to be conformable to equity

and good conscience may be incorporated in any decree entered by the court in this cause."

Plaintiff urges that it has presented a case which entitles it in equity to have its leases construed by the court in accordance with its interpretation of their provisions and to have that construction enforced by the court's injunction.

[1] It is, of course, elementary, that the court is without power to construe these leases, unless there is presented a case in which are involved rights of persons or property which are actually controverted in the particular case before the court. The judicial power may not be invoked upon a prophecy as to future conditions to establish a rule for controlling predicted future conduct. The plaintiff must ask that the defendant be decreed to do something, and, in a court of equity, the appeal must be predicated upon some ground which requires the exercise of the equitable powers of the court. However desirable it might be to have a decision upon the questions relating to the construction of the leases, this court is not empowered to decide abstract propositions, or to declare, for the government of the future conduct of the parties, principles or rules of law which cannot be made effective by the decree of the court upon the issues which are before it. United States v. Alaska Steamship Co., 253 U. S. 113, 116, 40 S. Ct. 448, 64 L. Ed. 808; United States v. Hamburg-Amerikanische Co., 239 U. S. 466, 475, 36 S. Ct. 212, 60 L. Ed. 387; California v. San Pablo & T. R. Co., 149 U. S. 308, 314, 13 S. Ct. 876, 37 L. Ed. 747; Prather v. Lewis, 287 Ill. 304, 122 N. E. 470; Surry Lumber Co. v. Wellons, 129 Va. 536, 106 S. E. 382; Southern Ry. Co. v. Georgia, 116 Ga. 276, 42 S. E. 508.

There is no modification of the rule just stated in Pierce v. Society of Sisters of Holy Name, 45 S. Ct. 571, 69 L. Ed. 1070 (decided June 1, 1925). An act of Oregon (Laws 1923, p. 9), effective September 1, 1926, required parents and guardians to send children between 8 and 16 years of age to the public schools. The Governor and other officers were required to enforce this law. Such enforcement meant the destruction of the private schools, whose owners sought protection against it. The court said:

"But they have business and property for which they claim protection. These are threatened with destruction through the unwarranted compulsion which appellants are exercising over present and prospective patrons of their schools. And this court has gone very far to protect against loss threatened by such action. *  *  * "

[2] Has the plaintiff made out a case for relief under the power of a court of equity to quiet titles and to remove clouds upon titles? The remedies afforded and modes of proceeding pursued in the federal courts, sitting as courts of equity, are not determined by local laws or rules of decision, but by general principles, rules, and usages of equity having uniform operation in those courts wherever sitting. Broadly speaking, this equitable jurisdiction is that which was exercised by the High Court of Chancery in England at the time of the adoption of the Constitution and the passage of the original Judiciary Act (1 Stat. 73), unless subsequently changed by act of Congress. Guffey v. Smith, 237 U. S. 101, 114, 35 S. Ct. 526, 59 L. Ed. 856; Mississippi Mills v. Cohn, 150 U. S. 202, 204, 14 S. Ct. 75, 37 L. Ed. 1052; McConihay v. Wright, 121 U. S. 201, 205, 7 S. Ct. 940, 30 L. Ed. 932. While the equitable jurisdiction of the federal courts may not be abridged by local law, a federal court of equity may administer an enlargement of equitable rights and enforce and protect rights given by a state statute, when such rights are properly the subject of an equity suit, unless to do so would contravene the distinction between law and equity. L. & N. R. Co. v. Western Union Tel. Co., 234 U. S. 369, 376, 34 S. Ct. 810, 58 L. Ed. 1356; Lawson v. U. S. Mining Co., 207 U. S. 1, 28 S. Ct. 15, 52 L. Ed. 65; Devine v. Los Angeles, 202 U. S. 313, 333, 26 S. Ct. 652, 50 L. Ed. 1046; Greely v. Lowe, 155 U. S. 58, 75, 15 S. Ct. 24, 39 L. Ed. 69; Holland v. Challen, 110 U. S. 15, 3 S. Ct. 495, 28 L. Ed. 52.

[3] Let us examine the case of the plaintiff in the light of the general usages of equity concerning bills of peace and bills quia timet, which control here in the absence of an enlargement of right by the local law. Under the usages of equity, bills of peace are of two kinds:

First. Those which are brought to establish a right claimed by the plaintiff, but controverted by numerous parties having distinct interests originating in a common source. A right of fishery, asserted by one party and controverted by numerous riparian proprietors on the river, is an instance given by Story where such a bill will lie. In such cases a court of equity will interfere, and bring all the claimants before it in one proceeding, to avoid a multiplicity of suits. A separate action at law, with a single claimant, would determine nothing be-

yond the respective rights of the parties as against each other, and such a contest with each litigant might lead to interminable litigation. To put at rest the controversy, and determine the extent of the rights of the claimants in a common subject, the bill lies, which is thus essentially one for peace. Sharon v. Tucker, 144 U. S. 533, 542, 12 S. Ct. 720, 36 L. Ed. 532.

Second. Bills of peace of the other kind lie where the right of the plaintiff to real property has been unsuccessfully assailed in different actions, and is liable to further actions of the same character, and are brought to put an end to the controversy. The equity in such a case arose from the protracted litigation for the possession of the property which the action of ejectment at common law permitted. That action was founded upon a fictitious demise, between fictitious parties, and a recovery in one action constituted no bar to another similar action or to any number of such actions. A change in the date of the alleged demise was sufficient to support a new action. Thus the party in possession, though successful in every instance, might be embarrassed and vexed, if not ruined, by a litigation constantly renewed. To put an end to such litigation, and give repose to the successful party, courts of equity interfered and closed the controversy.

To entitle the plaintiff to relief in such cases the concurrence of three particulars was essential: He must have been in the possession of the property; he must have been disturbed in its possession by repeated actions at law; and he must have established his right by successive judgments in his favor. Upon these facts appearing the court would interpose and grant a perpetual injunction to quiet the possession of the plaintiff against any further litigation from the same source. It is only where bills of peace of this kind—more commonly designated as bills to remove a cloud on title and quiet the possession to real property—are brought that proof of actual possession is necessary to maintain the suit. Frost v. Spitley, 121 U. S. 552, 7 S. Ct. 1129, 30 L. Ed. 1010; Holland v. Challen, supra. In most of the states there has been an enlargement of right in such cases resulting from the abolishment of the fictions of the common-law action of ejectment, and the necessity of repeated adjudications at law upon the right of the plaintiff no longer exists, where this new form of action has been adopted. Holland v. Challen, supra.

[4] It is clear that plaintiff's case, as stated in the bill or made out at the trial, does not fall within either class of bills of peace. It is not a bill of peace of the first class, because the interests of the defendants do not originate in a common source. The alleged controversies arise out of the provisions of five separate and distinct contracts. But, if the bill is treated as one to determine the rights of the claimants of distinct interests in a common subject originating in a common source, the jurisdiction of this court fails. The case was brought here by removal from the state court, on the ground that the alleged controversy between plaintiff and the defendants who removed the case was a separable one. If the case falls within the first class of bills of peace, it has no place here, and should be remanded to the state court. The basis of such a bill is the avoidance of a multiplicity of suits, and, if the case of one defendant is separated from that of the others, the right of plaintiff to appeal for equitable relief is destroyed.

Nor has the plaintiff presented a case for relief under the rules governing bills of peace of the second class. The title of plaintiff is not assailed by any actions for the possession of the property, and this is not a suit to put an end to any litigation of the kind.

[5] A bill quia timet, or to remove a cloud upon the title of real estate, differed from a bill of peace, in that it did not seek so much to put an end to vexatious litigation respecting the property as to prevent future controversy by removing existing causes of controversy as to its title. It was brought in view of anticipated wrongs or mischiefs, and the jurisdiction of the court was invoked because the party feared future injury to his rights or interests. To maintain a suit of this character it was generally necessary that the plaintiff should be in the possession of the property, except where the defendants were numerous, and that his title should have been established at law or be founded on undisputed evidence or long continued possession. Holland v. Challen, supra; Lawson v. United States, supra.

[6, 7] Under the general usages of equity, the fact that the interest of the plaintiff in a leasehold estate is not a bar to the maintenance of a bill to remove a cloud upon title, if the suit is in other respects well founded. A lease for a term of years is a chattel real. It conveys an interest in land. While it has some of the attributes of personalty, it is treated in many respects as real estate. People v. Shedd, 241 Ill. 155, 89 N. E. 332. Bills may be maintained in this court under

the general principles of equity jurisdiction to remove clouds upon the title to real or personal property. Judicial Code, § 57 (Comp. St. § 1039); Jellenik v. Huron Copper Co., 177 U. S. 1, 20 S. Ct. 559, 44 L. Ed. 647. But such a bill must meet the test of the usages of equity as to what constitutes a cloud upon title, unless some enlargement of equitable rights is found in the local law.

Under the usages of courts of equity adopted by the Constitution and the Judiciary Acts, clouds upon title had a well settled and defined meaning and signification. In Phelps v. Harris, 101 U. S. 370, 374 (25 L. Ed. 855) the court said:

"The questions, what constitutes such a cloud upon the title, and what character of title the complainant himself must have, in order to authorize a court of equity to assume jurisdiction of the case, are to be decided upon principles which have long been established in those courts. Prominent amongst these are, first, that the title or right of the complainant must be clear; and, secondly, that the pretended title or right which is alleged to be a cloud upon it, must not only be clearly invalid or inequitable, but must be such as may, either at the present or at a future time, embarrass the real owner in controverting it. * * * As to the defendant's title, if its validity is merely doubtful, it is more than a cloud, and he is entitled to have it tried by an action at law; and if it is invalid on its face, so that it can never be successfully maintained, it does not amount to a cloud, but may always be repelled by an action at law."

[8] It is also the rule, under usages of courts of equity which control here, if there is no enlargement of equitable rights by the state statutes, that a bill to quiet title will not lie to dispel mere verbal or oral assertions of ownership or interest, nor may it be maintained if the same record which must be introduced to establish the title claimed, will show there is no title. Devine v. Los Angeles, 202 U. S. 313, 332, 26 S. Ct. 652, 50 L. Ed. 1046, citing Hannewinkle v. Georgetown, 15 Wall. 547, 21 L. Ed. 231; Louisville & N. R. Co. v. W. U. Tel. Co., supra; Parker v. Shannon, 121 Ill. 452, 454, 13 N. E. 155; First Congregational Church v. Page, 257 Ill. 472, 100 N. E. 975.

In opposition to the statements of the Supreme Courts of both the United States and Illinois as to the requirements under the general usages of equity for relief under bills quia timet, plaintiff invokes Rector, etc., v. Rector, etc., 201 N. Y. 1, 94 N. E.

191. There the court sustained an action to cancel and remove a cloud upon the title to the plaintiff's premises in the nature of a covenant restricting the use of premises to church purposes. There was a state statute which authorized the maintenance of an action to compel the determination of any claim adverse to that of the plaintiff which the defendant makes, or which it appears from the public records the defendant might make, to an estate or interest in real property. The court sustained the bill under both the general powers of a court of equity and the state statute. With reference to the general usages of equity the court said:

"The power of a court of equity may be difficult to define. It is coextensive with the rights of persons to relief. Pomeroy, in his Equity Jurisprudence (volume 1, § 170), says: 'It is absolutely impossible to enumerate all the special kinds of relief which may be granted, or to place any bounds to the power of the courts in shaping the relief in accordance with the circumstances of particular cases. As the nature and incidents of proprietary rights and interests, and of the circumstances attending them, and of the relations arising from them, are practically unlimited, so are the kinds and forms of specific relief applicable to these circumstances and relations.' As applied to titles to real estate, and removing obstacles therefrom, it is the ordinary jurisdiction of a court of equity to perfect and complete the means by which the title, right, estate or interest of parties may be proved or secured, or to remove obstacles which hinder its enjoyment. Sharon v. Tucker, 144 U. S. 533 [12 S. Ct. 720, 36 L. Ed. 532]."

The opinion in which it was stated that the action could be maintained under general equitable rules as one to remove a cloud upon title, as well as under the state statute, was concurred in by three justices only. In the dissenting opinion, likewise concurred in by three judges, it was said:

"As an appeal to the equity powers of the court, it is necessary that the case shall fall under some recognized head of equity jurisdiction. I know of no branch of that jurisdiction which would comprehend such an action as this. It is asserted, however, that the power of a court of equity 'is coextensive with the rights of persons to relief,' and that the provisions of our code are broad enough for the case. The first assertion is true, only, in a case of equitable cognizance. When a person brings an equitable action, he must maintain it upon some

equitable ground. However elastic and discretionary the exercise of the power to grant equitable relief, I do not believe that it can be properly invoked by a party to cancel a covenant in his grant. I am not aware of any precedent and we are cited to none. Though in matters of apparent equity, as fraud or breach of trust, precedents are not necessary, it is dangerous to extend the authority of the court further than the practice of former times. * * * There is no charge of any fraudulent practices or of mistake. * * * The plaintiff is seeking affirmatively to annul, as a cloud upon its title, an agreement which entered into the consideration for the conveyance upon the ground that it was invalid, because unenforceable. If the invalidity of the covenant can be established by extrinsic evidence, then the plaintiff can defeat any action brought to enforce it. Can it be true that it is a cloud upon the title? There is no adverse claim to the property and, whether the restrictive covenant be valid or invalid, * * * how can it create a cloud upon title? If invalid, the defect would, necessarily, appear in any proceeding by the defendant to enforce it. I do not think that the fact that a defense exists to its enforcement is sufficient to warrant a resort to an equitable action."

The case was decided by the vote of the Chief Justice, who merely concurred in the result, without indicating whether he regarded the general equity powers of the court or the state statute as the proper basis for the action.

The principles stated in Sharon v. Tucker, supra, do not warrant any such extension of the powers of a court of equity with reference to bills to remove clouds upon title as is set forth in the opinion of the court in Rector, etc., v. Rector, etc., supra. The opinion in the former case was by Mr. Justice Field, who wrote the opinion in Holland v. Challen, supra. In Holland v. Challen the requirements of bills of the peace and bills to remove clouds upon title are stated, and the limitations are the ones which have been set forth above. In Sharon v. Tucker it is pointed out that the bill in that case could not be maintained, either as a bill of peace or a bill to remove a cloud. The ground of equitable jurisdiction was the protection of a title not evidenced by any record, but resting in the recollection of witnesses and the warrant for its exercise was found in the ordinary jurisdiction of equity to perfect and complete the means by which the right, interest, or estate of holders of real property—that is, their title—may be proved and secured, or to remove obstacles to its enjoyment. The plaintiffs claimed title by adverse possession. There was no record of their title, and its establishment was dependent upon the recollection of witnesses. The object of the suit was to provide record evidence of the title. The court said:

"The same principle which leads a court of equity upon proper proof to establish by its decree the existence of a lost deed, and thus make it a matter of record, must justify it upon like proof to declare by its decree the validity of a title resting in the recollection of witnesses, and thus make the evidence of the title a matter of record."

[9] It was with reference to such a case that the Supreme Court of the United States made the general observation that the flexibility of decrees of a court of equity will enable it to meet every emergency. But, of course, the statement was made with reference to cases of equitable cognizance. An equitable action, however broad and elastic the relief may be, must be maintained upon some equitable ground. And in Sharon v. Tucker the equitable ground was stated to be one entirely different from that on which bills to remove clouds on title are maintained. The bill in Sharon v. Tucker was sustained on the same principle as that on which the existence of lost deeds is established in equity. There is nothing in the case which even remotely warrants a modification of the requirements of bills to remove clouds on title as they have been laid down in Holland v. Challen, supra. Devine v. Los Angeles, supra, and other decisions of the Supreme Court. There is nothing in the case which sustains the right to maintain in equity a bill to remove a cloud on title, where the alleged cloud arises from a covenant in the grant by which the plaintiff obtains his interest or estate in the property. An examination of the cases demonstrates that the usages of equity concerning bills to quiet title, as recognized in the federal courts, are correctly stated in the dissenting opinion of Justice Gray in Rector, etc., v. Rector, etc., supra, in which three judges concurred, rather than in the opinion of the court, in which three judges only concurred.

[10] The plaintiff, in my opinion, has failed to make out a case under the general usages of equity as to bills to remove clouds on title. The alleged cloud arises out of verbal or oral claims of the lessors concerning the construction of the lease under which

plaintiff derives its right to the possession of the premises. If the lease is clearly to be construed as plaintiff claims it should be, then the invalidity of the contentions of the defendants appears from the document which plaintiff introduces to establish its title. If the construction of the lease is doubtful, then the claim of defendants is more than a cloud, and they are entitled to have it tried by an action at law. Phelps v. Harris, 101 U. S. 370, 375, 25 L. Ed. 855.

Plaintiff's case as a suit to quiet title under the general usages of equity reduces itself to this: Whenever a controversy arises between landlord and tenant as to the construction of the provisions of the lease touching the use of the demised premises, the tenant may resort to a court of equity, and, in the guise of a suit to remove a cloud on title, obtain a construction of the lease which will be binding upon the landlord when he attempts to enforce by legal remedies the provisions of the contract. Such an action is contrary to the usages of equity and contravenes the fundamental distinction between law and equity.

[11, 12] Having viewed plaintiff's case in the light of the general usages of equity controlling the federal courts, and as if there were no local statute or local law with reference to what constitutes a cloud on title, let us inquire whether or not there is any enlargement of equitable right under the local law which will be here administered. While it is true that alterations in the jurisdiction of the state courts cannot affect the equitable jurisdiction of the courts of the United States, so long as the equitable rights themselves remain, yet an enlargement of equitable rights themselves may be administered by the federal courts as well as by the courts of the state. It is proper to look to the legislation of the state in which the court sits to ascertain what constitutes a cloud upon the title, and what the state laws declare to be such the courts of the United States sitting in equity have the power to remove.

There are many state statutes of this kind, and it has been said that "an enlargement of equitable rights is effected, although presented in the form of a remedial proceeding." Holland v. Challen, supra. Indeed, much of equitable jurisdiction consists of better and more effective remedies for attaining the rights of the parties. Broderick's Will Case, 21 Wall. 520, 22 L. Ed. 599. The decisions show that the enforcement of statutes of this type in the federal courts are subject to three restrictions: (1) The case must be within the general class over which these courts are given jurisdiction; (2) a suit in equity does not lie where there is a plain, adequate, and complete remedy at law; (3) in those courts there can be no commingling of legal and equitable remedies, or substitution of the latter, whereby the constitutional right of trial by jury in actions at law is defeated. Louisville & N. R. Co. v. Western Union Tel. Co., 234 U. S. 369, 376, 34 S. Ct. 810, 58 L. Ed. 1356, and cases there cited.

[13] It is provided by the Chancery Act of Illinois (1 J. & A. Stat. p. 785) that the court may hear and determine bills to quiet title, and to remove clouds from the title to real estate, and bills to establish and confirm titles to real estate or incumbrance thereon, whether the lands in controversy are improved or occupied or unimproved or unoccupied. The clause, "and bills to establish and confirm titles to real estate or incumbrance thereon," was introduced by an amendment of June 5, 1911. Sess. Laws 1911, p. 253. The power of courts of equity to remove clouds upon title to real estate under the Illinois statute is substantially no broader, under the Illinois statute prior to the amendment of 1911, than it is under the general usages of courts of equity. There are some provisions as to possession and occupation which are not material here. A bill will not lie to remove a mere verbal assertion of ownership in property as a cloud upon title. A cloud upon title is a claim, apparently valid, which may be removed by extrinsic evidence, and equity will not take jurisdiction to remove a cloud on a title, where there is no defect in the title, except what is apparent on the face of the instrument under which the title is derived. Greenough v. Greenough, 284 Ill. 416, 120 N. E. 272; First Congregational Church v. Page, 257 Ill. 472, 100 N. E. 975; Parker v. Shannon, 121 Ill. 452, 13 N. E. 155. "It would be a rather anomalous situation," said the court in First Congregational Church v. Page, supra, "to permit one to remove as a cloud upon his title a part of the granting clause of the only instrument under which he claims title."

[14, 15] As to the amendment of 1911, the power conferred upon courts of equity is the power to establish and confirm titles to real estate. While a lease for a long term of years is treated under certain statutes and for certain purposes as real estate, it is essentially a chattel real. A lease, although for a long term, with payments of annual rent, is not a sale, which is a grant of ab-

solute ownership. Chicago v. Tribune Co., 248 Ill. 242, 93 N. E. 757; People v. Shedd, supra. It would be an unwarranted application of this provision to extend it to controversies between a landlord and tenant relative to the construction of the lease. When it is read in its relation to the statute of which it is a part, it is apparent that it cannot have such an application.

Moreover, before this provision will be administered in the Federal Courts, the case which is based upon it must be one over which those courts have jurisdiction. The court will not entertain a case merely for the purpose of establishing a rule for controlling predicted future conduct. Resort to a court of equity must be predicated upon some equitable ground. A bill to establish and confirm title, if it is to be maintained in this court, must be grounded upon some principle upon which courts of equity grant relief, as was the case in Sharon v. Tucker, supra. Property owners may not rush to a court of equity merely to have it do the work which is ordinarily performed by those who give opinions as to title or who guarantee those titles. The state statutes, as they must be administered here, do not enlarge the equitable rights of plaintiff, so as to permit it to maintain this action, which is not cognizable, as a bill to remove a cloud upon title, under the general usages of courts of equity.

[16] While the bill has been presented as one to remove a cloud from title, it is proper to inquire whether, upon the facts alleged and proved, there is any other ground upon which plaintiff's appeal to a court of equity may be sustained. The plaintiff should not be limited by phraseology in pleading, or by the specific form in which the claim for relief is presented.

[17, 18] The bill may not be sustained as one to enjoin a threatened breach of contract. Certainly an assertion by a lessor that he places a construction upon a lease different from the one which the lessee thinks it should receive is not a breach of the implied covenant of quiet enjoyment. A suit to enjoin a breach of a negative covenant in a contract is governed in the main by the same principles as is a suit for specific performance of an affirmative covenant. If the right is doubtful, relief by injunction is improper, and plaintiff's suit here is based upon the alleged doubts arising from the provisions of the lease. No act of defendants has been suggested which amounts even remotely to a threatened breach of the covenant of quiet enjoyment.

8 F.(2d)—64

[19] The bill may not be sustained as one to enjoin a forfeiture. No forfeiture has been declared. No cause of forfeiture is stated in the bill. No notice of breach of covenant has been given. The six-months period given plaintiff to cure its default has not even begun.

[20] It is urged that this bill must be sustained upon the broad principles of equity jurisdiction, that plaintiff has no adequate remedy at law, and that the power of a court of equity is coextensive with the rights of persons to relief. In other words, plaintiff invokes the principle that there is a wrong which cannot be righted elsewhere, and hence the right must be sustained in equity.

It is true that the absence of precedents or novelty in incident presents no obstacle to the exercise of the jurisdiction of a court of equity. It is the distinguishing feature of equity jurisdiction that it will apply settled rules to unusual conditions, and mold its decrees so as to do equity between the parties. But, while this is true, yet the facts of the case must come within some head of equity jurisprudence. When a person brings an equitable action, he must maintain it upon some equitable ground. The great advantage possessed by a court of equity is not so much in its enlarged jurisdiction as in the extent and adaptability of its remedial powers. Before the rule as to inadequacy of remedy at law is applied, some wrong must be shown for which the plaintiff is entitled to redress. In other words, there must be a cause of action, whether resort is had to one forum or the other. A court of equity, by avowing that there is a right, but no remedy known to the law, cannot create a right, in violation of the principles of both law and equity. Before there is a remedy, either at law or in equity, there must be a wrong cognizable in courts of justice under the established principles of law or equity; and what wrong have defendants done by merely asserting that they place upon the contracts in question a construction different from that for which plaintiff contends?

The offer to give bond for the construction of the new building, and the offer to reform the provisions of the leases with reference to purchase of the building at the expiration of the terms, do not aid the plaintiff. Rather they emphasize the fundamental infirmity in its appeal for equitable relief. If plaintiff is right in its construction of the leases, it is entitled to tear down the old building and to put up a new one, without giving bond and without submitting to

a modification of the leases. If plaintiff's contention is wrong, a court of equity cannot relieve against the obligations of the contracts, in the absence of some element of fraud, accident, or mistake. Equity does not have power to make contracts for the parties which they have not made for themselves.

The bill will be dismissed, without prejudice to the rights of the plaintiff under the leases here involved, when those rights are asserted in any appropriate proceeding.